STATE OF NORTH CAROLINA v. PATRICK MARK McKOY AND LAWRENCE
L. HARRISON

No. 76A86

(Filed 12 August 1986)

**Criminal Law § 34.2— evidence of other offenses—admission harmless error**

There was no prejudicial error in a prosecution for felonious breaking or
entering and felonious larceny from the erroneous admission of an accomplice's
testimony implicating defendant in an unrelated breaking or entering where
the testimony was not offered or admissible for a purpose within N.C.G.S.
§ 8C-1, Rule 404(b); defendant did not open the door to the testimony by ques-
tioning the witness about his criminal record in an effort to impeach his
credibility; and there was no prejudice because the testimony exonerated one
defendant and the other defendant did not show that there was a reasonable
possibility that a different result would have been reached had the testimony
been excluded.

Justice MITCHELL concurring in the result.

Justices MEYER and MARTIN join in the concurring opinion.

THE State appeals from a decision of the Court of Appeals, 78
N.C. App. 531, 337 S.E. 2d 666 (1985), *Chief Judge Hedrick* dis-
senting, granting defendants a new trial following their convic-
tions of felonious breaking or entering and felonious larceny. The
cases were tried before *Brewer, J.,* at the 1 October 1984 Crimi-
nal Session of Superior Court, CUMBERLAND County. Heard in the
Supreme Court on 11 June 1986.

The sole issue on appeal is whether the Court of Appeals
erred in holding that the trial judge committed prejudicial error
in admitting testimony implicating defendant Harrison in an unre-
lated breaking or entering. We agree with the Court of Appeals
that the trial judge erred in admitting this testimony. However,
we find that defendants have failed to show prejudice by its ad-
mission and therefore we reverse the Court of Appeals.

*Lacy H. Thornburg, Attorney General, by Doris J. Holton,
Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Leland Q.
Towns, for defendant Patrick Mark McKoy.*

*James R. Parish for defendant Lawrence L. Harrison.*

BILLINGS, Justice.

At trial, the State's case depended primarily on the testimony of Thomas Jefferson "Luke" Bowens. Bowens testified that on the night of 26 July 1983, he and the two co-defendants had been at an arcade in a shopping center in Spring Lake, North Carolina. As they left the arcade, defendant Harrison said that he had a pair of bolt cutters in the blue football bag that he was carrying and Bowens stated that he needed money. Bowens took the bolt cutters and broke into a storage building behind the shopping center. The building was used to store merchandise that had been put on layaway for customers of the Maxway Store. Bowens entered the building, stated "Yo, man, . . . we just got paid," and removed approximately eighteen microwave ovens, four television sets and some miscellaneous items which he handed to the defendants. The three men hid the merchandise in an empty trailer. Bowens later arranged for the sale of the ovens and each of the three received approximately $600.

Bowens was later arrested for an unrelated crime and as a result of a plea arrangement, he provided officials with information concerning other break-ins, including the break-in at the Maxway Store in which he implicated Harrison and McKoy.

During direct examination of Bowens by the prosecutor, the following exchange took place:

Q. Had the three of you done anything like this before?

MR. MELVIN: Objection, your Honor.

COURT: Overruled.

(Witness shaking head.)

COURT: You may answer.

A. Answer?

COURT: Yes.

A. What you mean?

Q. Had you and Mr. Harrison and Mr. McKoy or any of you broken into places like this before?

MR. MELVIN: Objection.

COURT: Overruled.

A. No.

Q. Had you broken into anything—at homes or anything with these two, either of these two fellows before. [sic]

MR. MELVIN: Objection.

COURT: Overruled.

COURT: You may answer.

A. (Shook head negatively.) No.

During cross-examination, Mr. Bowens was asked by defense counsel to "go back as far as the hands of time [would] take [him] in [his] career" and discuss everything he had been convicted of. Bowens testified that he had been convicted of breaking or entering in 1978. He was released from prison in 1980. He was arrested six months later for breaking or entering but was not convicted. He was arrested "every thirty days" after that and was finally convicted in 1983 for breaking into a pawn shop in Fayetteville and was put on probation. Following the break-in at the Maxway Store, Bowens committed another breaking or entering of a pawn shop.

On redirect examination, the prosecutor questioned Bowens as follows:

Q. Mr. Bowens, you broke into the Boulevard Pawn Shop, didn't you?

A. Yes.

. . . .

Q. That's one of the break-ins Mr. Melvin asked you about, isn't it?

A. Yes.

Q. Who broke into the pawn shop with you?

MR. MELVIN: Objection.

COURT: Overruled.

Q. Who went into the pawn shop with you?

A. The best of my knowledge? Harrison.

Q. The defendant, Mr. Harrison?

A. Yes.

Q. And you also broke into a house at 206 Holland Drive, home of Isabel Rodriguez, didn't you?

A. Who?

Q. You did.

A. Not that I can remember of.

Q. And you took a General Electric black and white television set, a Zenith nineteen inch color television set and a Pioneer stereo, that was back in March of 1983?

A. Oh—I know what you're talking about.

Q. Okay.

A. No. They wasn't with me.

. . . .

Q. Do you remember Mr. McKoy being with you?

A. Not really.

Q. You don't remember breaking into a house with Mr. McKoy?

A. I remember breaking into a house. Not with him.

. . . .

Q. Now, Mr. Bowens, you remember back earlier in the year, when you were about to be tried for breaking into the Boulevard Pawn Shop?

A. Yes.

Q. That's the same pawn shop you said Mr. Harrison and you broke into—

MR. MELVIN: Objection, your Honor.

COURT: Overruled.

Q. —is that right?

A. Yes.

State v. McKoy

Q. And your lawyer and I had some discussions that resulted in a plea bargain for you, isn't that correct?

A. Yeah.

Q. Now, is that the plea bargain in which you were to plead guilty and get six years?

A. About that pawn shop?

Q. Um-hum.

A. I got probation for that pawn shop. Oh, you got the wrong pawn shop here.

Q. That's the pawn shop that you broke into.

A. Sir, I'm going to be honest with you. The way this went down, I don't know which charge I got tried for and which business I broke into. It was some of them.

Q. You broke into some of them?

A. Yeah.

Q. And you broke in with a lot of different people?

A. Quite —

Q. Are you sure that — and are you sure that you broke into this place with Mr. Harrison?

A. If that's what's on that paper, it has to be.

Q. Do you remember going in there with him?

A. Which pawn shop?

COURT: Repeat your question, Mr. Ammons.

Q. The pawn shop that you broke into with Mr. Harrison, do you remember which pawn shop that was?

A. (Pause.) I think so.

Q. Which pawn [sic] was it?

A. It's three Braggs. Bragg — I broke in all three of them with different people.

Q. In any event, do you remember pleading guilty in the case in which you broke into a pawn shop with Mr. Harrison?

MR. MELVIN: Objection, your Honor. He's answered that.

COURT: Overruled.

A. (Pause.) I remember pleading guilty to the pawn shop that I broke into. See, I broke into Bragg by myself, too, now.

Q. That's not the one you broke into with Mr. Harrison?

A. I don't think it is.

On appeal to the Court of Appeals, defendants successfully argued that the trial court erred to defendants' prejudice in permitting the prosecutor to elicit from the witness evidence of another crime committed by defendant Harrison and in permitting leading questions about involvement of the defendants in other crimes, even though the witness denied that the defendants were involved.

Defendants contend that the only purpose for the prosecutor's questions was to show defendants' propensity to commit other break-ins and that its only relevance was to show the character of the defendants. The State argues as follows: (1) that defense counsel's general objection is effective only if there is no purpose whatsoever for which the evidence could have been admissible; (2) that the burden is on the defendant to demonstrate that the evidence would not be admissible for any purpose; (3) that the evidence was admissible to show defendants' intent or guilty knowledge; and (4) that the defendant "opened the door" to the evidence by asking the witness on cross-examination about his criminal record, which included the pawn shop break-in which Bowens said defendant Harrison had committed with him. We agree that unless, on the face of the evidence, there is no purpose for which the evidence could have been admissible, a general objection is ineffective.[1] 1 *Brandis on North Carolina Evidence* § 27

---

1. Note, however, this Court's recent case of *State v. Morgan*, 315 N.C. 626, 640, 340 S.E. 2d 84, 93 (1986) where Justice Meyer, speaking for the Court, said in reference to the offer of evidence under Rules 404(b) and 608(b): "Both rules require the trial judge, prior to admitting extrinsic conduct evidence, to engage in a balancing, under Rule 403, of the probative value of the evidence against its prejudicial effect. The better practice is for the proponent of the evidence, out of the presence of

(1982). On appeal, defendant must demonstrate that the evidence would not be admissible for any purpose. *State v. Ward*, 301 N.C. 469, 272 S.E. 2d 84 (1980).

In the present case we believe that defendants have successfully demonstrated that evidence of another crime committed by Harrison is not admissible for any purpose.

The North Carolina Rules of Evidence, N.C.G.S. § 8C-1, Rule 404(b) (Supp. 1985) provides:

> (b) *Other crimes, wrongs, or acts.*—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

In *State v. DeLeonardo*, 315 N.C. 762, 340 S.E. 2d 350 (1986), we held that subdivision (b) of Rule 404 is consistent with North Carolina practice prior to its enactment. In this regard, our courts have consistently relied on what is commonly referred to as the "McClain rule," articulated in *State v. McClain*, 240 N.C. 171, 81 S.E. 2d 364 (1954). In *McClain*, this Court stated that as a general rule "in a prosecution for a particular crime, the State cannot offer evidence tending to show that the accused has committed another distinct, independent, or separate offense." *Id.* at 173, 81 S.E. 2d at 365. We then enumerated certain well recognized exceptions—the "other purposes" to which Rule 404(b) makes reference.[2] Our courts have since relied on *McClain* both for its succinctly stated general rule and its clear articulation of the exceptions. However, in order to understand fully the *McClain* rule

---

the jury, to inform the court of the rule under which he is proceeding and to obtain a ruling on its admissibility prior to offering it."

2. As Professor Stansbury noted, the proposition should more properly be stated, not as a general rule with exceptions, but as follows: "Evidence of other offenses is inadmissible on the issue of guilt if its only relevancy is to show the character of the accused or his disposition to commit an offense of the nature of the one charged; but if it tends to prove any other relevant fact it will not be excluded merely because it also shows him to have been guilty of an independent crime." 1 *Brandis on North Carolina Evidence* § 91 (1982).

and thereby properly construe its codification in Rule 404(b), it is necessary to review the analysis provided in that case.

We first noted in *McClain* that the general rule rests on the following "cogent reasons":

(1) "Logically, the commission of an independent offense is not proof in itself of the commission of another crime."

(2) Evidence of the commission by the accused of crimes unconnected with that for which he is being tried, when offered by the State in chief, violates the rule which forbids the State initially to attack the character of the accused, and also the rule that bad character may not be proved by particular acts, and is, therefore, inadmissible for that purpose.

(3) "Proof that a defendant has been guilty of another crime equally heinous prompts to a ready acceptance of and belief in the prosecution's theory that he is guilty of the crime charged. Its effect is to predispose the mind of the juror to believe the prisoner guilty, and thus effectually to strip him of the presumption of innocence."

(4) "Furthermore, it is clear that evidence of other crimes compels the defendant to meet charges of which the indictment gives him no information, confuses him in his defense, raises a variety of issues, and thus diverts the attention of the jury from the charge immediately before it. The rule may be said to be an application of the principle that the evidence must be confined to the point in issue in the case on trial."

*Id.* at 173-74, 81 S.E. 2d 365-66 (citations omitted).

We also pointed out that "[s]ince evidence of other crimes is likely to have a prejudicial effect on the fundamental right of the accused to a fair trial, the general rule of exclusion should be strictly enforced in all cases where it is applicable." *Id.* at 176, 81 S.E. 2d at 368.

Finally, we provided the following insights to assist in the determination of whether evidence of an offense other than the one charged should be excluded under the general rule or admitted under one of the exceptions:

The acid test is its logical relevancy to the particular ex-
cepted purpose or purposes for which it is sought to be in-
troduced. If it is logically pertinent in that it reasonably
tends to prove a material fact in issue, it is not to be rejected
merely because it incidentally proves the defendant guilty of
another crime. But the dangerous tendency and misleading
probative force of this class of evidence require that its ad-
mission should be subjected by the courts to rigid scrutiny.
Whether the requisite degree of relevancy exists is a judicial
question to be resolved in the light of the consideration that
the inevitable tendency of such evidence is to raise a legally
spurious presumption of guilt in the minds of the jurors.
Hence, if the court does not clearly perceive the connection
between the extraneous criminal transaction and the crime
charged, that is, its logical relevancy, the accused should be
given the benefit of the doubt, and the evidence should be re-
jected. *State v. Gregory, supra; State v. Lyle*, 125 S.C. 406,
118 S.E. 803.

*Id.* at 177, 81 S.E. 2d at 368.

Applying this reasoning in the case *sub judice*, we must re-
ject the State's argument that, because there was no direct
evidence of a conspiracy and the case went to the jury on an act-
ing-in-concert theory, evidence of Harrison's participation in
another break-in was offered to prove guilty knowledge or shared
intent on 26 July when the Maxway break-in occurred. Bowens'
testimony, if believed, could lead only to a conclusion that Har-
rison and McKoy were at all times aware of Bowens' intent to
break into the Maxway storage building for the unlawful purpose
of removing merchandise, that they participated in the break-in
and resulting larceny, and that they shared in the profits of the
unlawful act. Guilty knowledge or shared intent of the defendants
was not a "material fact in issue."

The record belies the argument that Bowens' testimony con-
cerning Harrison's participation in another break-in was offered
for the purpose of showing knowledge or intent.[3] The witness

---

3. In fact, if we were to speculate as to the purpose of the prosecutor in pursu-
ing the line of questioning initially, it would appear that he was attempting to show
that these three persons had engaged in a pattern of break-ins amounting to a com-
mon scheme. Assuming the prosecutor had a good-faith basis for believing that the

Bowens testified that he had broken into the pawn shop on at least three occasions and that one of those occasions was on 8 November 1983, four and one-half months after the break-in at the Maxway storehouse. He was never able to identify on which occasion the defendant Harrison was with him, saying, "I broke in all three of them with different people." Therefore, the testimony was not relevant to show, as the State contends, that because he had been with Bowens during a previous break-in, defendant Harrison knew that Bowens was going to commit larceny from the storehouse, thus tending to establish guilty knowledge and intent, for there is no evidence that the defendant Harrison broke into any place with Bowens prior to the Maxway break-in.

Further, the defendant, by questioning the witness Bowens about his criminal record in an effort to impeach his credibility, did not "open the door" to evidence of the defendant's commission of other crimes. The case relied upon by the State, *State v. Pruitt*, 301 N.C. 683, 273 S.E. 2d 264 (1981) is clearly distinguishable. In *Pruitt* the defendant was being tried for conspiracy to commit forgery and conspiracy to utter forged instruments. He objected to testimony on re-direct of a State's witness that a previous charge against the witness of being an accessory after the fact to a break-in, about which she had been questioned on cross-examination, related to the theft of the check-writer used to write the checks involved in the conspiracy cases then being tried. She said that the defendant had been involved in that theft. The relevance of that evidence to the case being tried was obvious.

While this Court in *Pruitt* said that when the defense cross-examines a witness about prior crimes in an effort to impeach her credibility, the State is "entitled to explore the matter fully in its attempt to rehabilitate its witness," *id.* at 687, 273 S.E. 2d at 267, we went further and noted that "[i]n the process of securing that elaboration, the state was able to secure the connection it had earlier demonstrated between defendant and the forgery scheme." *Id.* We do not read that opinion as saying that any time a defendant questions a witness for impeachment purposes about

witness's answer would support such a finding, his questions on direct were entirely proper. However, the witness denied prior participation by the defendants with him in a common scheme.

the witness's prior convictions, the defendant opens the door for the witness to testify about the defendant's participation in those same crimes if evidence of those crimes otherwise would not be admissible against the defendant and the defendant's involvement in no way lessens the witness's culpability or aids in an attempt to rehabilitate the witness.

Inasmuch as the evidence of defendant Harrison's other criminal conduct was not offered or admissible for a purpose within N.C.G.S. § 8C-1, Rule 404(b) and was not admissible because the witness was questioned about his own criminal conduct, its admission was error. We do not agree with the Court of Appeals, however, that defendants were prejudiced thereby.

In the case of defendant McKoy, Bowens repeatedly stated that McKoy was not involved in any other break-ins. Thus, Bowens' testimony was favorable to this defendant, and he has failed to show that the admission of testimony concerning defendant Harrison's involvement would have changed the result in his case. *See* N.C.G.S. § 15A-1443(a); *State v. Wilson*, 311 N.C. 117, 316 S.E. 2d 46 (1984) (verdicts and judgments are not to be lightly set aside, nor for any improper ruling which did not materially and adversely affect the result of the trial).

With respect to defendant Harrison, Bowens' testimony at trial, if believed, clearly established Harrison's guilt as a participant in the Maxway break-in. The State's entire case against both defendants depended upon the jury's believing Bowens' testimony. It is highly unlikely that the jury would have had a reasonable doubt about Bowens' credibility regarding the crime in the case *sub judice* but would have believed the conflicting and uncertain statements about Harrison's involvement with him in a different crime and on that basis have become convinced of Harrison's propensity to commit crimes with Bowens and therefore his involvement in the breaking or entering and larceny under consideration. The defendant Harrison has failed to show that there is a reasonable possibility that a different result would have been reached at trial had Bowens' testimony concerning Harrison's involvement in the other break-in been excluded. N.C.G.S. § 15A-1443(a). We therefore reverse the Court of Appeals; the judgments of the Superior Court of Cumberland County shall remain undisturbed.

Reversed.

Justice MITCHELL concurring in the result.

The majority has concluded that evidence tending to show that the defendant Harrison committed another felonious break-in with the State's witness, in addition to that charged in this case, was inadmissible but not prejudicial. As a result, the majority has reversed the decision of the Court of Appeals which awarded the defendant a new trial. I concur only in the result reached, because I believe the evidence of the other break-in committed by the defendant Harrison with the State's witness was admissible in this case.

During cross-examination of the State's witness Bowens, defense counsel inquired into all crimes Bowens had ever committed and attempted to show both his long criminal record and the fact that he had made deals with the State. By so doing, the defense counsel opened the door to permit the State to inquire into the facts of all of those crimes, including the identity of anyone who participated with the State's witness in committing them. *State v. Pruitt,* 301 N.C. 683, 686-87, 273 S.E. 2d 264, 267 (1980). The defendant having opened the door on cross-examination, the State came in to show that the defendant Harrison had participated in at least one other break-in inquired about by the defendant during cross-examination. This was proper, and the evidence resulting was admissible. *Id.*

Evidence of the other break-in by Harrison and the State's witness was admissible for another and more important reason. Evidence of other crimes committed by a defendant is clearly admissible for "purposes, such as *proof of motive,* opportunity, *intent,* preparation, *plan, knowledge,* identity or absence of mistake, entrapment or accident." N.C.G.S. § 8C-1, Rule 404(b) (Supp. 1985) (emphasis added). All of the evidence in the present case tended to show that the defendants did not commit the actual breaking or entering of the store, but stood by while the State's witness broke into and entered the store. As a result, the State's case against the defendants was based entirely upon circumstantial evidence of their common plan and concerted action with the State's witness. Therefore, the majority seems to me to be entirely and obviously incorrect in stating that: "Guilty knowledge or

shared intent of the defendants was not a 'material fact in issue.'" No fact in issue was more material in this case than the knowledge or shared intent of the defendants. It was absolutely vital to the State's case that it produce evidence of the defendants' motive, intent, plan or knowledge that the State's witness Luke Bowens would break into the store.

This Court has specifically held in prior cases that evidence just such as that held inadmissible here by the majority is competent and admissible to show that a defendant knew the unlawful purpose of others who participated with him in the crime for which he stands charged. *E.g., State v. Ferrell*, 205 N.C. 640, 172 S.E. 186 (1934). Evidence of the other break-in by the defendant Harrison with the State's witness—whether it was committed before or after the crimes charged in this case—was at least some substantial circumstantial evidence of Harrison's motive and intent as well as of the existence of a common plan and concerted action.

Finally, I do not understand the need for the first footnote to the opinion of the majority wherein the majority quotes *State v. Morgan*, 315 N.C. 626, 640, 340 S.E. 2d 84, 93 (1986) for the obvious proposition that before admitting extrinsic conduct evidence under Rules 404(b) or 608(b) of our Rules of Evidence, the trial court must "engage in a balancing, under Rule 403 of the probative value of the evidence against its prejudicial effects." The balancing required by Rule 403 and by the quoted language in *Morgan* does not apply until a court is considering whether to exclude evidence it has *determined to be otherwise admissible* because the unfair prejudice of the *otherwise admissible* evidence outweighs its probative value. Clearly, the balancing requirement of Rule 403 is not pertinent to the opinion of the majority which concludes that evidence of Harrison's participation in another break-in was not admissible for any purpose within Rule 404(b).

As I have previously indicated, I would hold the evidence in question admissible under the specific exceptions of Rule 404(b). Since the evidence went directly to the most material fact in issue in this case, I would also find that its probative value far exceeded any danger of unfair prejudice resulting from its admission.

For the foregoing reasons, I concur only in the result reached by the majority.

Justices MEYER and MARTIN join in this concurring opinion.