STATE OF NORTH CAROLINA v. MICHAEL RAY

No. COA08-1329

(Filed 7 July 2009)

**1. Evidence— prior crimes or bad acts—lack of similarities— remoteness in time**

The trial court abused its discretion in a first-degree sex offense and indecent liberties case by allowing the State to cross-examine defendant about instances of domestic violence occurring between defendant and his former girlfriend, and defendant is entitled to a new trial because: (1) although defendant's first trial ended in a mistrial, the trial judge's ruling that the State could not introduce evidence of defendant's 1990 and 1991 criminal convictions or any other criminal convictions of defendant from more than ten years earlier remained in effect at defendant's retrial; (2) although the State asserted that evidence of defendant's 1990 behavior was admissible since it tended to show that defendant had a problem with assaultive behavior when he drank alcohol, the State failed to make a threshold showing that defendant had committed assaults in 1990 while under the influence of alcohol, and the 1990 convictions arose in circumstances signifi-

**STATE v. RAY**

[197 N.C. App. 662 (2009)]

cantly different from the instant offenses where defendant was charged with sexual offenses against a seven-year-old girl whom he barely knew versus personal conflicts fifteen years earlier between defendant and an adult woman with whom he was involved in a romantic relationship; (3) the fact that both alleged victims were female did not establish the kind of similarity under which evidence may be admitted concerning assaults committed fifteen years prior to the charged offense; (4) the cross-examination would be impermissible under N.C.G.S. § 8C-1, Rule 609 since more than 10 years had elapsed on the convictions; and (5) the probative value of the cross-examination was very slight and was significantly outweighed by its probable prejudicial effect on the jury.

## 2. Sentencing— indecent liberties—erroneous maximum sentence

The trial court erred by imposing a sentence of 20 to 25 months imprisonment for the charge of indecent liberties because the maximum sentence corresponding to a minimum sentence of 20 months is 24 months instead of 25 months.

## 3. Evidence— expert testimony—examination consistent with sexual abuse

Testimony by the State's expert medical witness that his examination of an alleged victim of a sexual offense and indecent liberties was consistent with a child who had been sexually abused did not improperly vouch for the victim's credibility and was properly admitted.

Appeal by Defendant from judgment entered 11 June 2008 by Judge Alma L. Hinton in Hoke County Superior Court. Heard in the Court of Appeals 8 April 2008.

*Attorney General Roy Cooper, by Assistant Attorney General Angenette R. Stephenson, for the State.*

*Geoffrey W. Hosford, for Defendant.*

BEASLEY, Judge.

Defendant (Michael Ray) appeals from judgments and convictions of first-degree sex offense and indecent liberties. We reverse.

Defendant was indicted in November 2005 on charges of first-degree sex offense and indecent liberties. The alleged victim was

a seven-year-old girl, L.G.[1] Defendant's first trial was in May 2008. After the jury was impaneled, the trial court excused two jurors. This left a jury of only ten people, which required the trial court to declare a mistrial.

Defendant was retried in June 2008. The State's evidence tended to show, in pertinent part, the following: L.G. testified that in June 2005 she was seven-years-old, and that on 12 June 2005, she accompanied her mother and five-year-old brother to an outdoor party at Defendant's house. Towards the end of the party, L.G. used the bathroom in Defendant's house. L.G. wore a skirt, underpants, and a shirt. L.G. had used the toilet, and was starting to pull up her underpants and skirt when the Defendant entered the bathroom. L.G. testified that Defendant lifted her off the toilet, held her against the bathroom wall, and "stuck his finger in [her] privacy part." Defendant did not talk to her and left immediately after this incident. L.G. testified that "it hurt[]" when Defendant "put his finger inside [her] privacy part."

L.G. returned outside and told her mother what happened. L.G.'s mother took her home and called the police. Later that evening, a law enforcement officer came to their house and took a brief statement from L.G. and her mother. After these events, L.G. saw a doctor for treatment for painful urination, which she described as a "bladder problem."

On 10 August 2005, L.G. was examined by Dr. Howard Loughlin, medical director of child abuse evaluations at the Southern Regional Office of the Area Health Education Center (AHEC), in Fayetteville, North Carolina. Dr. Loughlin was qualified as an expert in pediatrics and child abuse pediatrics. He testified that his examination of L.G. had included an interview and a physical examination. L.G. told Dr. Loughlin that Defendant had "touched [her] down there" while she was using the bathroom at Defendant's house. She said that Defendant came into the bathroom and "put his finger in [my] private" and described the penetration as painful. Dr. Loughlin testified that L.G. experienced "intrusive thoughts" about the incident. Dr. Loughlin also interviewed L.G.'s mother and Detective Rugg.

Although Dr. Loughlin's examination revealed no physical indicia of sexual abuse or trauma, he offered an expert opinion that L.G.'s history was "consistent" with having been sexually abused. His opinion was based in part upon the consistency between L.G.'s statements

---

1. To protect the privacy of the minor child, we refer to her in this opinion as "L.G."

to him and to others. He also noted L.G.'s description of digital pene-
tration as painful, her bad dreams and intrusive thoughts about the
incident, and unspecified behavioral changes reported by her mother.

Detective Timothy Rugg of the Hoke County Sheriff's Department
testified that on 12 June 2005 he received a call from another law
enforcement officer about a reported incidence of child sexual abuse
involving digital penetration. On 14 June 2005 Detective Rugg took
formal statements from L.G. and her mother. L.G.'s statement, which
Detective Rugg read to the jury, largely corroborated her trial testi-
mony. In September 2005 Detective Rugg received Dr. Laughlin's
report from AHEC. Thereafter, he drew up warrants charging De-
fendant with sex offenses against L.G.

The Defendant's evidence is summarized as follows: Defendant
testified that he hosted a backyard party on 12 June 2005. L.G.'s
mother had attended, accompanied by L.G. and her younger brother.
Defendant recalled that L.G. had used the bathroom inside his
house and remembered scolding L.G. for looking in his refrigerator.
However, Defendant denied molesting L.G. and testified that he
did not enter the bathroom while the child was there or touch her
inappropriately.

Following the presentation of evidence, the jury found Defendant
guilty of first-degree sex offense and indecent liberties. The trial
court sentenced Defendant to concurrent sentences of 384 to 470
months for first-degree sex offense, and 20 to 25 months for indecent
liberties. From these judgments and convictions, Defendant appeals.

---

[1] Defendant first argues that the trial court committed reversible
error by allowing the State to cross-examine him about instances of
domestic violence occurring in 1990 between Defendant and his
former girlfriend. The Defendant asserts that the evidence was inad-
missible and that its prejudicial nature outweighed its probative
value. We agree.

Prior to Defendant's first trial, the State moved to admit evi-
dence that Defendant had been convicted of assault by pointing a
gun, assault with a deadly weapon, and two charges of assault on a
female, all arising from incidents in 1990 between Defendant and
Brenda McPhaul, the Defendant's former girlfriend. Superior Court
Judge Robert F. Floyd, Jr., ruled that the State could not introduce
evidence of these or any other criminal convictions of Defendant
from more than ten years earlier. Defendant's first trial ended in a

mistrial, but Judge Floyd's ruling remained in effect at Defendant's retrial before Superior Court Judge Alma L. Hinton. Consequently, the State could not introduce evidence of Defendant's 1990 or 1991 criminal convictions.

However, over Defendant's objection, the State was allowed to cross-examine Defendant about the conflicts with McPhaul that allegedly were the basis of these convictions, and about whether Defendant was drinking at the time of these events:

PROSECUTOR: Whenever you drink alcohol, specifically when you drink a lot of alcohol, isn't it true that it changes your demeanor?

DEFENDANT: No, sir.

PROSECUTOR: It does not change your demeanor?

DEFENDANT: No, sir.

THE COURT: [To the prosecutor] Mr. Hardin, the jurors are having trouble hearing your questions.

PROSECUTOR: I'm sorry. Let me ask it again. Mr. Ray, I asked, isn't it true when you drink a lot of alcohol, isn't it true that that changes your demeanor?

DEFENDANT: No, sir.

PROSECUTOR: Isn't it true that you have had problems with alcohol and assaultive behavior before?

DEFENDANT: No, sir.

PROSECUTOR: You have not had any problems where alcohol was involved and you assaulted other individuals?

DEFENDANT: Yes, I have had that.

PROSECUTOR: So, again, my question is, isn't it true that you have had prior occurrences where alcohol has affected your assaulting other individuals?

DEFENDANT: No, sir.

PROSECUTOR: So the alcohol played no part in your assaulting other individuals?

DEFENDANT: No, sir.

PROSECUTOR: Did the alcohol play a part in your assaulting Ms. Brenda McPhaul back in December of 1990?

DEFENDANT: No, sir.

PROSECUTOR: Did alcohol play a part in your assaulting Ms. McPhaul with a deadly weapon in December of 1990?

DEFENDANT: No, sir.

PROSECUTOR: Did alcohol play a part in your assaulting Ms. McPhaul by pointing a gun in December of 1990?

DEFENDANT: No, sir.

PROSECUTOR: And did alcohol play a part in your assaulting Ms. McPhaul in February of 1990?

DEFENDANT: No, sir.

PROSECUTOR: The alcohol had no effect on your assaulting her during those times?

DEFENDANT: No, sir.

PROSECUTOR: But you had been drinking?

DEFENDANT: I can't really say "yes" that far back.

This cross-examination was admitted under North Carolina Rules of Evidence 404(b), as evidence of Defendant's motive and intent to commit a sexual assault against L.G. Defendant asserts that this cross-examination testimony was inadmissible. We agree.

North Carolina Rules of Evidence 404(b) states in part that:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

As summarized by the Supreme Court of North Carolina:

In [*State v.*] *McClain*, [240 N.C. 171, 81 S.E.2d 364 (1954)], this Court stated that as a general rule "in a prosecution for a particular crime, the State cannot offer evidence tending to show that the accused has committed another distinct, independent, or separate offense." We then enumerated certain well recognized

exceptions—the "other purposes" to which Rule .404(b) makes reference. Our courts have since relied on *McClain* both for its succinctly stated general rule and its clear articulation of the exceptions. . . . We also pointed out that "[s]ince evidence of other crimes is likely to have a prejudicial effect on the funda-mental right of the accused to a fair trial, the general rule of exclusion should be strictly enforced in all cases where it is applicable."

*State v. McKoy*, 317 N.C. 519, 525-26, 347 S.E.2d 374, 378 (1986) (quot-ing *McClain*, 240 N.C. at 173 and 176, 81 S.E.2d at 365 and 368). *McKoy* further noted that:

"The acid test [of admissibility of evidence under Rule 404(b)] is its logical relevancy to the particular excepted purpose or pur-poses for which it is sought to be introduced. . . . [T]he danger-ous tendency and misleading probative force of this class of evi-dence require that its admission should be subjected by the courts to rigid scrutiny. . . . Hence, if the court does not clearly perceive the connection between the extraneous criminal trans-action and the crime charged, that is, its logical relevancy, the accused should be given the benefit of the doubt, and the evi-dence should be rejected."

*McKoy*, 317 N.C. at 527, 347 S.E.2d at 379 (quoting *McClain*, 240 N.C. at 177, 81 S.E.2d at 368) (other citations omitted).

Rule 404(b) evidence "must be offered for a proper purpose, must be relevant, [and] must have probative value that is not substantially outweighed by the danger of unfair prejudice to the defendant[.]" *State v. Haskins*, 104 N.C. App. 675, 679, 411 S.E.2d 376, 380 (1991). If "the probative value of the evidence is so slight and the evidence is so prejudicial that there is a substantial likelihood that the jury will consider the evidence only for the purpose of determining the defend-ant's propensity to commit the crimes with which he has been charged, the evidence must be excluded[.]" *State v. White*, 331 N.C. 604, 615-16, 419 S.E.2d 557, 564 (1992).

"To effectuate these important evidentiary safeguards, the [admission of evidence under Rule 404(b)] . . . is constrained by the requirements of similarity and temporal proximity." *State v. Al-Bayyinah*, 356 N.C. 150, 154, 567 S.E.2d 120, 122-23 (2002) (citations omitted). Regarding temporal proximity, "remoteness in time is less significant when the prior conduct is used to show intent, motive,

knowledge, or lack of accident; remoteness in time generally affects only the weight to be given such evidence, not its admissibility." *State v. Stager*, 329 N.C. 278, 307, 406 S.E.2d 876, 893 (1991) (citation omitted). As to the requirement of similarity:

> Under Rule 404(b) a prior act or crime is 'similar' if there are "some unusual facts present in both crimes or particularly similar acts which would indicate that the same person committed both." However, it is not necessary that the similarities between the two situations "rise to the level of the unique and bizarre." Rather, the similarities simply must tend to support a reasonable inference that the same person committed both the earlier and later acts.

*Id.* at 304, 406 S.E.2d at 890-91 (quoting *State v. Green*, 321 N.C. 594, 603, 604, 365 S.E.2d 587, 593 (1988)).

In the instant case, the State contends that the cross-examination evidence is relevant to the issues of Defendant's motive and intent, on the grounds that (1) the Defendant is charged with an offense committed against a female, and the incidents from 1990 also involved a female; (2) the Defendant was drinking beer on the date of the alleged offense, and it is possible that the Defendant was also drinking during the 1990 incidents. On this basis, the State asserts that evidence of Defendant's 1990 behavior towards McPhaul is admissible because it tends to show that Defendant has a "problem" with "assaultive behavior" when he drinks alcohol. We disagree for several reasons.

At trial, Defendant's 1990 and 1991 convictions were excluded, the State offered no witness testimony about the incidents, and the Defendant did not testify that he had assaulted McPhaul. Additionally, there was no evidence that the Defendant was drinking or under the influence of alcohol during the 1990 incidents. Accordingly, the State failed to make a threshold showing that Defendant had committed assaults in 1990 while under the influence of alcohol.

Furthermore, Defendant's 1990 convictions arose in circumstances significantly different from those of the instant offenses. In the present case, Defendant was charged with sexual offenses against a seven-year-old girl whom he barely knew. The offenses were allegedly committed during a picnic at Defendant's house, after Defendant had consumed a quantity of beer. The 1990 incidents, which occurred fifteen years earlier, were based on personal conflicts between Defendant and an adult woman with whom he was then involved in a romantic relationship. No evidence was introduced that

the 1990 incidents took place at Defendant's house or after he drank beer. We conclude that these events do not demonstrate the kind of similarity that would "support a reasonable inference that the same person committed both the earlier and later acts." *Stager*, 329 N.C. at 304, 406 S.E.2d at 891.

As discussed above, the State failed to offer evidence that Defendant was drinking or was under the influence of alcohol during his disputes with McPhaul. Thus, the only common feature of the charged offenses and the 1990 events is that L.G. and McPhaul are both female. "When the State's efforts to show similarities between crimes establish no more than 'characteristics inherent to most' crimes of that type, the State has 'failed to show . . . that sufficient similarities existed' for the purposes of Rule 404(b)." *State v. Carpenter*, 361 N.C. 382, 390, 646 S.E.2d 105, 111 (2007) (quoting *Al-Bayyinah*, 356 N.C. at 155, 567 S.E.2d at 123). In *Al-Bayyinah*, the Supreme Court of North Carolina held that use of a weapon and a demand for money, followed by immediate flight from the scene, were characteristics "inherent to most armed robberies" and did not support admission of the earlier robbery under Rule 404(b). In *Carpenter*, the Court held that absence of individual wrapping of cocaine rocks in two drug sales was not an unusual fact or distinctively similar act, and that evidence of the earlier drug sale was inadmissible. Similarly, we conclude that the fact that both L.G. and McPhaul were female does not establish the kind of "similarity" under which evidence may be admitted concerning assaults committed fifteen years prior to the charged offense.

It is important to note that the cross-examination of Defendant would also be impermissible under N.C. Gen. Stat. § 8C-1, Rule 609 (2007) which states:

> (a) General rule.—For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a felony, or of a Class A1, Class 1, or Class 2 misdemeanor, shall be admitted if elicited from the witness or established by public record during cross-examination or thereafter.

> (b) Time limit.—Evidence of a conviction under this rule is not admissible if a period of more than 10 years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts

and circumstances substantially outweighs its prejudicial effect. However, evidence of a conviction more than 10 years old as calculated herein is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.

More than 10 years had elapsed on the convictions about which Defendant was asked, assault by pointing a gun, assault with a deadly weapon, and two charges of assault on a female, all arising from incidents in 1990 between Defendant and a former girlfriend, since the date of conviction or confinement and would therefore be inadmissible.

We conclude that it was error to admit the challenged cross-examination. However, "before the defendant is entitled to any relief on appeal, he must show that he was prejudiced by the error." *State v. Mason*, 317 N.C. 283, 291, 345 S.E.2d 195, 200 (1986) (citations omitted). In this regard:

A defendant is prejudiced by errors relating to rights arising other than under the Constitution of the United States when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises. The burden of showing such prejudice under this subsection is upon the defendant.

N.C. Gen. Stat. § 15A-1443(a) (2007). Thus, to show prejudice, a defendant must show that the error affected the outcome of the trial. *State v. Lynn*, 157 N.C. App. 217, 221, 578 S.E.2d 628, 632 (2003) (holding discovery violation was "not reversible error where there is no likelihood that the outcome of the trial was affected") (citations omitted).

In the instant case, it was undisputed that in June 2005 Defendant hosted an outdoor party attended by L.G. and her mother, and that during the party L.G. used the bathroom in Defendant's house. L.G. testified that Defendant entered the bathroom while she was using it and put his finger in her private parts. The Defendant denied touching L.G. or being in the bathroom with the child. L.G.'s trial testimony was corroborated by her statements to law enforcement officers and Dr. Loughlin, but neither L.G.'s mother nor other adult guests at the party testified in corroboration of the incident. There was no physical or medical evidence of abuse. Dr. Loughlin testified that he had been

told that L.G. suffered from "behavioral changes" and "intrusive thoughts" after the alleged incident; however, the State offered no testimony verifying the existence of such problems, describing any behavioral changes, or articulating a temporal relationship between L.G.'s emotional state and the party at Defendant's house. Indeed, Defendant's uncontradicted testimony was that he discouraged parents from bringing children to his parties.

Against this backdrop of evidence, the jury's assessment of the relative credibility of L.G. and the Defendant assumed crucial significance. This was the context in which the State cross-examined Defendant about his "assaultive behavior" committed against a former girlfriend, and about whether these assaults were fueled by Defendant's consumption of alcohol. We conclude that the probative value of the cross-examination was very slight, and was significantly outweighed by its probable prejudicial effect on the jury.

"We review a trial court's determination to admit evidence under N.C. R. Evid. 404(b) . . . for an abuse of discretion. An abuse of discretion occurs when a trial judge's ruling is 'manifestly unsupported by reason.' " *State v. Summers*, 177 N.C. App. 691, 697, 629 S.E.2d 902, 907, (2006) (quoting *State v. Riddick*, 315 N.C. 749, 756, 340 S.E.2d 55, 59 (1986) (internal citations omitted)). In the instant case, we conclude that the admission of the challenged cross-examination constituted an abuse of discretion and may have affected the outcome of the trial, and that the Defendant is entitled to a new trial.

[2] Defendant argues next that the trial court erred by imposing a sentence of 20 to 25 months imprisonment for Defendant's conviction of indecent liberties. Defendant asserts that the maximum sentence corresponding to a minimum sentence of 20 months is 24 months, not 25 months. The State agrees with Defendant on this issue. On retrial, if Defendant is convicted of indecent liberties and is given a minimum sentence of 20 months, the maximum sentence may not exceed 24 months.

[3] Finally, Defendant argues that the trial court committed reversible error in admitting certain testimony by the State's expert witness, Dr. Loughlin. Defendant contends that Dr. Loughlin improperly vouched for the victim's credibility. We disagree.

During his testimony, Dr. Loughlin referred to the results of his examination of L.G. as "consistent with" a child who had been sexu-

ally abused. Dr. Loughlin did not testify that abuse had in fact occurred or commented on L.G.'s believability. This Court previously has held that, upon a proper foundation, the trial court does not err by allowing a physician to testify that certain findings were "consistent" with sexual abuse. "[O]ur appellate courts have generally upheld the admission of testimony from a medical expert in a sexual abuse case that her observations are 'consistent with sexual abuse.' " *In re T.R.B.*, 157 N.C. App. 609, 618, 582 S.E.2d 279, 285 (2003) (quoting *State v. Brothers*, 151 N.C. App. 71, 77-78, 564 S.E.2d 603, 607-08 (2002)). This assignment of error is overruled.

For the reasons discussed above, we conclude that Defendant's conviction must be reversed and the case remanded.

Reversed and remanded for new trial.

Judges McGEE and HUNTER, Robert C. concur.