STATE OF NORTH CAROLINA v. WENDELL MASON

No. 351A85

(Filed 2 July 1986)

1. **Rape and Allied Offenses § 6; Robbery § 5.2— knife with three or four-inch blade—instruction that knife deadly weapon—no error**

 The trial court did not err in a prosecution for first degree rape, first degree kidnapping, and armed robbery by instructing the jury that a knife was a deadly weapon where there was evidence that the blade was three or four inches long and was held at various times to the victim's throat, side and stomach; defendant threatened to cut off the victim's clothing with the knife; and defendant threatened to cut the victim's throat from ear to ear if she did not comply with his demands.

2. **Criminal Law § 102.8— jury argument—State's case uncontradicted—not an impermissible comment on defendant's failure to testify**

 The State's closing argument in a prosecution for rape, kidnapping, and armed robbery did not constitute an impermissible comment on defendant's failure to testify where the prosecutor stated that the State's case was "uncontradicted," that there was "nothing else from this witness stand to show otherwise," and the prosecutor asked the jury to consider the absence of alibi witnesses.

3. **Criminal Law § 102.6— prosecutor's jury argument—workload of law officers —no error**

 The State's jury argument in a prosecution for kidnapping, rape and armed robbery referring to the workload of law enforcement officers was not improper where the argument was obviously directed to the anticipated argument by the defendant that the jury should not convict defendant because the

State failed to produce certain scientific evidence tying defendant to the crime and the remarks were designed to urge the jury to convict on the basis of the evidence presented even if the investigation was not perfect and did not produce all the evidence which a perfect investigation might have produced.

**4. Criminal Law § 102.6— jury argument—rights of victims—no prejudice**

The State's argument to the jury on the rights of victims in a prosecution for kidnapping, rape and armed robbery was not of such gross impropriety as would be likely to influence the verdict of the jury.

**5. Kidnapping § 1.3— original instruction on facilitation of felony—repeated instruction on flight—no prejudicial error**

The trial court did not commit prejudicial error in a prosecution for kidnapping, rape and armed robbery when it first instructed the jury that the State had to prove that defendant confined or restrained the victim for the purpose of facilitating rape and robbery, then, in response to a request for repeated instructions on kidnapping, included facilitation of flight in the instruction. Neither party had requested special instructions at the charge conference; the indictment alleged kidnapping for the commission of a felony and to facilitate flight; it was apparent from the prosecutor's argument and defendant's lack of objection that both parties expected an instruction on facilitating commission of felonies and flight; and the instruction did not change the instructions discussed at the charge conference or the possible verdicts of the jury. N.C.G.S. § 15A-1221, N.C.G.S. § 15A-1443(a).

**6. Kidnapping § 2; Rape and Allied Offenses § 7— first degree kidnapping and first degree rape—separate punishment—double jeopardy violation**

Double jeopardy principles preclude separate punishment for first degree rape and first degree kidnapping where the rape is the sexual assault used to elevate kidnapping to first degree.

APPEAL by defendant pursuant to N.C.G.S. § 7A-27(a) from judgments entered by *Wright, J.* at the 11 February 1985 Criminal Session of Superior Court, ONSLOW County.

Defendant was convicted of first degree rape, first degree kidnapping, and robbery with a dangerous weapon. He received consecutive sentences of life imprisonment for the rape, forty years for the kidnapping and forty years for the armed robbery. Heard in the Supreme Court on 11 March 1986.

The State's evidence tended to show that on 11 April 1984, the victim was employed as a cab driver in Jacksonville, North Carolina. At approximately 9:30 that morning as she was leaving a McDonald's restaurant, the victim picked up a passenger who indicated that he wanted to be taken to Walden Drive. The passenger, whom the victim later identified as the defendant, became

"fidgety" and subsequently pulled out a pocketknife and said "Take it easy. All I want is your money. This is a robbery." The defendant then directed the victim to drive to a remote area where he ordered her to stop the car and remove her clothing. After taking $12.00 belonging to the cab company and $30.00 belonging to the victim, the defendant instructed the victim to climb into the back seat where he raped her. During this entire period of time, the defendant continued to threaten the victim with the pocketknife.

Following the rape, the defendant forced the victim into the trunk of the car. She was able to locate a tire tool which she used to pry open the trunk. She dressed, walked to the nearest house, and called law enforcement officials.

The victim described her assailant as a black male, between 5'8" and 5'11" in height, weighing between 165 and 180 pounds. He was wearing a dark blue jacket, blue jeans, a black belt, a fishing cap, and white hightop basketball-type shoes. The victim identified a cap found in her car as that worn by her assailant. There was also testimony at trial that shoe prints found in the area around the car matched those of a pair of white tennis shoes taken from the defendant and identified by the victim as those worn by her assailant.

The victim selected defendant's photograph during a pre-trial photographic line-up and made a positive in-court identification of the defendant as her assailant.

*Lacy H. Thornburg, Attorney General, by Francis W. Crawley, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Acting Appellate Defender, by Gordon Widenhouse, Assistant Appellate Defender, for defendant-appellant.*

BILLINGS, Justice.

On appeal defendant assigns error to certain portions of the trial court's instructions to the jury and to portions of the prosecutor's closing argument. For the reasons set forth below, we find no error on these issues. The case must be remanded for a new sentencing hearing, however, as a result of defendant's convic-

tions and sentences for both first degree rape and first degree kidnapping based on the rape.

[1]  Defendant first contends that by instructing the jury that "a knife . . . of three or four inches in length is a deadly weapon," the trial judge erroneously created a mandatory presumption, thereby removing a question of fact from the jury and relieving the State of its burden of proving beyond a reasonable doubt an essential element of both first degree rape and armed robbery. We disagree.

This issue was recently raised and fully addressed in *State v. Torain*, 316 N.C. 111, 340 S.E. 2d 465 (1986). In *Torain* we noted that "[i]t has long been the law of this state that '[w]here the alleged deadly weapon and the manner of its use are of such character as to admit of but one conclusion, the question as to whether or not it is deadly . . . is *one of law, and the Court must take the responsibility of so declaring.' State v. Smith*, 187 N.C. 469, 470, 121 S.E. 737, 737 (1924) (emphasis added)." *Id.* at 119, 340 S.E. 2d at 470. In *Torain* we held that a utility knife with a one-inch razor blade, held to the victim's throat and used to cut the straps off her bathing suit, was a dangerous or deadly weapon *per se.*

The evidence in the present case fully supports the trial judge's instruction that the pocketknife used to threaten the victim was a dangerous or deadly weapon likely to produce death or great bodily injury. There was evidence that the blade was three to four inches long and was held at various times to the victim's throat, side and stomach. Defendant threatened to cut off the victim's clothing with the knife and to cut her throat from "ear to ear" if she did not comply with his demands. There is little doubt that a knife with a three to four inch blade is a weapon capable of inflicting serious injury upon the victim when used in the manner threatened.

Defendant next contends that he was "substantially" prejudiced by the prosecutor's "grossly improper" closing argument. Defendant specifically challenges what he characterizes as an improper reference to defendant's failure to testify, the prosecutor's appeal to the "fears and frustrations of the jurors," inviting them "to do justice" in this case, and the prosecutor's references to the "rights of victims."

[2] The defendant offered no evidence at trial. During her closing argument, the prosecutor stated that the State's case was "uncontradicted," that there was "nothing else from this witness stand to show otherwise," and asked the jury to consider the absence of alibi witnesses. The defendant objected and, following a hearing outside the presence of the jury, the trial judge overruled the objection.

A similar challenge was made to the prosecutor's closing argument in a recent case involving this defendant (*State v. Mason*, 315 N.C. 724, 340 S.E. 2d 430 (1986)). In that case, while acknowledging that "a prosecutor may not make any reference to or comment on a defendant's failure to testify," 315 N.C. at 732, 340 S.E. 2d at 436, we also recognized that a defendant's failure to produce exculpatory evidence or to contradict evidence presented by the State may properly be brought to the jury's attention by the State in its closing argument, citing *State v. Jordan*, 305 N.C. 274, 280, 287 S.E. 2d 827, 831 (1982). Here, as in the earlier *Mason* case, we find that the prosecutor merely argued the absence of exculpatory evidence and therefore her statements did not constitute an impermissible comment on defendant's failure to testify.

[3] We also find defendant's challenge to the prosecutor's allegedly impermissible appeal to the jurors' "fears and frustrations" to be without merit. The portion of the argument at issue was as follows:

You know, I wish that I could even have a carload of nuns or the minister of the First Baptist Church come here and say to you that they saw this happen, but they didn't because that kind of evidence just doesn't exist. We work with what we have to work with, and I can certainly assure you that law enforcement here in Onslow County is excellent. We have a good group of law enforcement officers and the Onslow County Sheriff's Department, who is headed up by Mr. Woodward, who is your elected Sheriff, he heads up an excellent team of law enforcement officers, men and women in this county and the Chief of Police here in Jacksonville heads up an excellent group of men and women who are trained law enforcement officers to uphold the laws in this county, but they like everybody else, are limited in number,

State v. Mason

limited in time and limited in resources just like I am. You know, every time I come into court to try a case, I always think of something I wish I had done but I didn't. No matter how much time I spend preparing. We're just all human beings. There are some things that just aren't humanly possible. The evidence you have is what's before you, and I don't understand what more the State of North Carolina could produce to convince you that the defendant is guilty.

Defendant contends that these comments "convert[ed] the presumption of innocence into a presumption of guilt" by "imploring [the jurors] to do their part for law enforcement . . . ." Defendant failed to object during trial.

This argument was obviously directed to the anticipated argument by the defendant that, because the State had failed to produce certain scientific evidence tying the defendant to the crime, the jury should not convict the defendant.

The defendant, appearing *pro se* at trial, thoroughly cross-examined all witnesses for the State. His strategy was to apprise the jury that the State had failed to produce evidence of the results of a rape examination done on the victim, of fingerprints, or of hair samples taken from the cap found in the car.

The prosecutor's remarks were designed to urge the jury to convict on the basis of the evidence presented if it convinced them beyond a reasonable doubt of the defendant's guilt, even if the investigation was not perfect and did not produce all evidence which a perfect investigation might have produced. We cannot say that such an argument is improper; it clearly was not so grossly improper as to have required the trial judge to intervene *ex mero motu. See State v. Mason*, 315 N.C. 724, 340 S.E. 2d 430.

[4]   Defendant's final challenge to the prosecutor's closing argument concerns certain comments she made concerning the rights of the victim. After reviewing for the jury the rights of the defendant to jury trial, to confront and cross-examine witnesses, and to be represented by an attorney, the prosecutor continued:

But put yourself in the place of [the victim], also. You know, like all of the victims, she's not had any rights. In every case that you ever see tried in a criminal courtroom, it's never really the defendant that's on trial; it's usually the

victim that's on trial, especially so in rape cases. I've seen it every time; the rape victim is the one that's always on trial. They don't have any rights. Victims don't have any rights. [The victim] on April the 11th, 1984 was doing what she was supposed to be doing, which was out trying to earn a living just like every single one of you was doing on that day. She was given no rights by the defendant when he got into her cab and he pulled a knife on her and he directed her where to go. She was given no rights when the defendant directed her down this dirt path in an isolated area of Onslow County, and holding the knife at her side, demanded that she give him her money. [The victim] was given no rights when the defendant held a knife at her throat and threatened to cut her throat from ear to ear. She was given no rights when the defendant, at knifepoint, ordered her to take her clothes off. She was given no rights when the defendant ordered her at knifepoint to crawl across the seat of her cab. She was given no rights when the defendant, at knifepoint, raped her. And she was given no rights when the defendant ordered her at knifepoint to get out of the car, go around to the back of the car, get in the trunk and shut the trunk lid of [sic] her. That woman was scared to death. She thought she was going to die. If you watched her testify from this witness stand, you could see the fear in her eyes. She was scared on that day and she was scared yesterday, and she's scared today, and the reason, part of the reason she's scared is because she has no rights and she knows that. She had to come in this courtroom yesterday and face the man that had raped her, robbed her and shut her up in the trunk of her own car. She had no choice in the matter at all. [The victim] had to get on this witness stand and describe to you everything in detail that happened on April 11, 1984. She had no choice. She had no rights. She had to do that. [The victim] had to allow herself to be cross-examined by the defendant himself and have him challenge her. She had no choice. She had to do that. She's had no choice at all since, in this entire ordeal. She's had no rights and what's so — somewhat upsetting about the whole thing is that she's done nothing wrong.

Defendant views this portion of the argument as a "play to pit the victim against a defendant, asking the jury, in effect, to

assuage the victim's suffering by convicting someone, rather than convicting an accused based solely on the evidence after proof beyond a reasonable doubt." Defendant further argues that the prosecutor turned the case "into a referendum on victim's rights." Defendant failed to object to the prosecutor's comments at trial and we do not find the remarks to be of such gross impropriety as would be likely to influence the verdict of the jury. *See State v. Covington*, 290 N.C. 313, 328, 226 S.E. 2d 629, 640 (1976) (finding no gross impropriety in the district attorney's statement that "everybody is concerned about the rights of the defendants . . . when in God's name are we going to start getting concerned about the rights of the victims?"). As was the case in *Covington*, the prosecutor's argument in the case *sub judice* was merely a request to the jury that it give equal consideration to the State and the defendant.

The assignment of error is overruled.

[5] Defendant's next assignment of error concerns the trial judge's instructions to the jury on the kidnapping charge. The trial judge's initial instruction said, in pertinent part, that the State had to prove that the defendant "confined or restrained [the victim] for the purpose of facilitating his rape or his robbery." Following a request by the jury for clarification, the trial judge again instructed

> . . . that the defendant confined in the trunk or restrained [the victim] along the road for the purpose of facilitating his commission of rape or robbery and I have previously defined rape and robbery to you, and I charge you on that issue that confining her in the trunk as to element one, you might or you might not find that that fits this third element. I charge you that this third element would apply very directly to whether or not he put a knife to her and forced her to go along the road to a place of his designation to thereby rob her and rape her.

After the jury had reached its verdicts in the charges of rape and robbery, it once again requested that the instructions on kidnapping be repeated. The trial judge responded by offering, in pertinent part, the following explanation of the elements of kidnapping:

Third, that the defendant confined [the victim] in the trunk of her car for the purpose of facilitating his flight after committing rape or robbery. I have previously defined rape and robbery for you, and you will remember those instructions. Let me go over the third one again. Third, that the defendant confined [the victim] in his trunk, in the trunk of her, the cab, for the purpose of facilitating his flight after committing rape or robbery.

Defendant contends that the charge "patently changed the purpose from facilitating the commission of a felony to facilitating flight from a felony—a purpose not articulated or explained in the prior sets of instructions," thereby violating N.C.G.S. § 15A-1234(c) (1985). N.C.G.S. § 15A-1234 outlines the procedures to be employed for giving additional instructions, and subsection (c) provides as follows:

Before the judge gives additional instructions, he must inform the parties generally of the instructions he intends to give and afford them an opportunity to be heard. The parties upon request must be permitted additional argument to the jury if the additional instructions change, by restriction or enlargement, the permissible verdicts of the jury. Otherwise, the allowance of additional argument is within the discretion of the judge.

It is obvious that the trial judge failed to comply with the statute, for the record does not indicate that he informed the parties of the additional instructions he intended to give or gave them an opportunity to be heard. However, before the defendant is entitled to any relief on appeal, he must show that he was prejudiced by the error. N.C.G.S. § 15A-1443(a).

Prior to arguments, the trial judge conducted a charge conference as required by N.C.G.S. § 15A-1231. He informed the parties that he would permit the jury to consider verdicts of either guilty or not guilty of each of the three offenses, first degree rape, first degree kidnapping and robbery with a dangerous weapon. Neither party requested special instructions or asked whether the judge intended to include other particular instructions in his charge. The indictment for first degree kidnapping charged that the defendant had restrained and removed the victim "for the purpose of facilitating the commission of a felony" and "facili-

tating the flight of Wendell Mason following his participation in the commission of a felony, to wit: first degree rape and robbery with a dangerous weapon." Therefore, the trial judge should have instructed the jury originally on both purposes for the kidnapping alleged in the indictment. In fact, it is apparent that the parties expected an instruction on both the purpose of facilitating commission of the felonies and the purpose of facilitating flight, for the prosecutor, without objection, argued both. The defendant's argument was that he was not the person who committed the offenses; he made no argument related to the proof of the purpose or purposes for the kidnapping.

Although the trial judge did not instruct the jury in his original instruction that they could consider the purpose of facilitating flight, that omission was error favorable to the defendant, for the indictment and the evidence both supported the instruction. It was, therefore, not error for the trial judge to correct his instruction before the jury rendered its verdict on the kidnapping charge. *State v. Jones*, 267 N.C. 434, 148 S.E. 2d 236 (1966). Because the State was entitled to the instruction and the instruction did not in any way change any instructions discussed at the charge conference, the defendant has failed to demonstrate how he was prejudiced by the correction or by the failure of the trial judge to inform him of his intention to give the instruction. Also, the corrected instruction did not change the possible verdicts of the jury and therefore did not trigger the right of the parties to make additional arguments upon request.

This assignment of error is overruled.

[6]  By his final assignment of error defendant contends that double jeopardy principles preclude his convictions for both first degree rape and first degree kidnapping since the former offense is a necessary element of the latter offense. We agree. Under our holding in *State v. Freeland*, 316 N.C. 13, 340 S.E. 2d 35 (1986), defendant may not be separately punished for the offenses of first degree rape and first degree kidnapping where the rape is the sexual assault used to elevate kidnapping to first degree. *See State v. Mason*, 315 N.C. 724, 340 S.E. 2d 430. Therefore defendant is entitled to a new sentencing hearing. The trial court may arrest judgment on the first degree kidnapping conviction and re-

sentence for second degree kidnapping, or it may arrest judgment on the rape conviction.

New sentencing hearing.