STATE OF NORTH CAROLINA v. MICHAEL RAY

No. 307PA09

(Filed 27 August 2010)

**Appeal and Error— preservation of issues—failure to object at trial—failure to argue plain error on appeal**

The Court of Appeals erred in a first-degree statutory sexual offense and indecent liberties with a child case by granting defendant a new trial based on the admission of his testimony regarding his prior assaultive behavior because: (1) defendant failed to preserve this issue for appellate review since he objected to the admission of this evidence only during a hearing out of the jury's presence, and he failed to argue plain error on appeal; and (2) even if defendant had preserved this issue for appellate review by timely objection, he would not be entitled to a new trial since he was not prejudiced by the evidence when the jury did not obtain any new information from defendant's testimony, and there was not a reasonable possibility of a different outcome at trial without the admission of this testimony in light of the substantial evidence of defendant's guilt. The additional issues considered by the Court of Appeals were undisturbed.

Justice HUDSON dissenting.

Chief Justice PARKER and Justice TIMMONS-GOODSON joining in the dissenting opinion.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, —— N.C. App. ——, 678 S.E.2d 378 (2009), reversing judgments entered on 11 June 2008 by Judge Alma L. Hinton in Superior Court, Hoke County, and remanding the case for a new trial. Heard in the Supreme Court 11 May 2010.

*Roy Cooper, Attorney General, by Robert C. Montgomery, Special Deputy Attorney General, for the State-appellant.*

*Geoffrey W. Hosford for defendant-appellee.*

NEWBY, Justice.

This case presents the question whether defendant is entitled to a new trial based upon admission of evidence to which he did not offer a timely objection at trial and which he did not contend

amounted to plain error on appeal. We conclude that defendant has failed to preserve for appellate review the trial court's decision to admit into evidence a portion of his testimony regarding his history of alcohol consumption and assaultive behavior. Further, we determine that even if defendant had preserved this issue for appellate review by timely objection, he would not be entitled to a new trial because he was not prejudiced by the evidence about which he now complains. Accordingly, we reverse in part the decision of the Court of Appeals.

The State's evidence at defendant's trial on charges of first-degree statutory sexual offense and indecent liberties with a child tended to show the following. On 12 June 2005, seven year old L.G. and her mother attended a horseshoe tournament at defendant's house. Upon arrival, L.G. played games with other young children in attendance. After some time spent playing games, L.G. asked her mother if she could enter defendant's house to use the bathroom. Additionally, L.G. asked defendant whether he would allow her to enter his house to use the bathroom. Defendant acceded to L.G.'s request and, as L.G. had not previously visited defendant's house, informed her of the bathroom's location. L.G. then proceeded to the bathroom. While L.G. was in the bathroom attempting to pull up her clothes, and over her protests, defendant opened the bathroom door, entered, and walked toward L.G. Defendant then grabbed L.G., slammed her against a wall, lowered her clothes, covered her mouth, and digitally penetrated her vagina several times.

After the attack defendant left the bathroom and L.G. replaced her clothes. Immediately following, L.G. ran out of defendant's house and, while crying, informed her mother of defendant's conduct. L.G. and her mother then returned home and called the police. Later that evening, Deputy Jones and Sergeant Lewis of the Hoke County Sheriff's Office visited L.G.'s home. The officers prepared an incident report containing L.G.'s description of the evening's events.

Subsequently, Detective Sergeant Timothy Rugg ("Det. Rugg") of the Hoke County Sheriff's Office led the investigation into defendant's interaction with L.G. Det. Rugg first interviewed L.G. on 14 June 2005. L.G. recounted to Det. Rugg the details of defendant's conduct on the evening of 12 June 2005. L.G. explained that defendant had "hurt her" by digitally penetrating her vagina "about five times" while she was in the bathroom of his house. L.G.'s mother also spoke with Det. Rugg. Among other things, L.G.'s mother revealed that L.G. was experiencing pain when using the bathroom. Det. Rugg suggested

that L.G.'s mother take the child to a medical facility for immediate diagnosis and treatment, and he arranged a later appointment for L.G. to undergo a child medical exam at a specialty clinic in Fayetteville.

After speaking with Det. Rugg on 14 June 2005, L.G.'s mother took her to the pediatric emergency room of Cape Fear Valley Health System. There L.G. complained of experiencing pain while urinating. Following a urine culture, L.G. was diagnosed with and treated for a urinary tract infection ("UTI"). According to Howard Loughlin, M.D., an expert in pediatrics and child abuse pediatrics, digital manipulation of the vaginal area can cause a UTI and such a diagnosis on 14 June 2005 is consistent with vaginal area manipulation on 12 June 2005. L.G. also underwent a physical examination of her vaginal and anal areas during this emergency room visit. The physical examination revealed that while L.G.'s "[h]ymen appear[ed] open," there were "no signs of trauma" to her vaginal and anal areas.

Two months later, on 10 August 2005, Dr. Loughlin evaluated L.G. In addition to speaking with Det. Rugg and L.G.'s mother, Dr. Loughlin interviewed L.G. L.G. recalled to Dr. Loughlin that she and her mother were visiting defendant's house. During the visit, she needed to use the bathroom. While she was in the bathroom, defendant entered the room, "[s]lammed [her] against the wall," and "touched [her] private," which L.G. identified as her genital area. L.G. explained that defendant's digital penetration of her "felt bad when he was doing it and later." Dr. Loughlin found significant L.G.'s description of the digital penetration as painful, explaining that typically a child does not associate pain with such an act unless the child has experienced it.

Also as part of his evaluation, Dr. Loughlin reviewed L.G.'s medical records from her 14 June 2005 examination resulting in a UTI diagnosis, including the finding that L.G.'s vaginal and anal areas appeared normal and evinced no signs of trauma. Further, Dr. Loughlin physically examined L.G. and similarly found no signs of trauma. However, Dr. Loughlin explained that the absence of visible trauma to the vaginal or anal area of a digital penetration victim is "not uncommon." Ultimately, Dr. Loughlin opined that, based on several factors, including L.G.'s description of the event as painful and the resulting UTI, L.G.'s history "was consistent with her being sexually abused."

Following the State's presentation of evidence, defendant testified. Defendant denied that he had any contact with L.G. However, he

also recounted that he followed L.G. into his house on 12 June 2005, was in his house alone with L.G., and left the house before L.G. came back outside. Further, defendant admitted that he consumed roughly twelve beers on 12 June 2005. Moving beyond the events of 12 June 2005, defendant later informed the jury that he had convictions for, *inter alia*, driving while impaired and assault with a deadly weapon, and he acknowledged the "strong possibility" that he has a problem with alcohol.

During a portion of the State's cross-examination of defendant, the prosecutor focused on defendant's alcohol consumption and his alleged "slamm[ing]" of L.G. against a wall during the encounter. Outside the presence of the jury, the prosecutor informed the trial court that, for the purpose of proving motive and intent and pursuant to Rule of Evidence 404(b), he would like to question defendant regarding his assault of a woman after he consumed alcohol on several occasions during 1990. The prosecutor explained to the court that he had learned from the victim of these prior assaults that defendant did act in an assaultive manner after consuming alcohol. During the hearing defendant objected, but the trial court allowed the State to question defendant regarding this prior conduct for the purpose of proving motive and intent. The hearing concluded and the jury returned.

Once the State's examination of defendant resumed, the following exchange occurred:

Q. Isn't it true that you have had problems with alcohol and assaultive behavior before?

A. No, sir.

Q. You have not had any problems where alcohol was involved and you assaulted other individuals?

A. Yes, I have had that.

Q. So, again, my question is, isn't it true that you have had prior occurrences where alcohol has affected your assaulting other individuals?

A. No, sir.

Q. So the alcohol played no part in your assaulting other individuals?

A. No, sir.

Q. Did the alcohol play a part in your assaulting Ms. Brenda McPhaul back in December of 1990?

A. No, sir.

Q. Did alcohol play a part in your assaulting Ms. McPhaul with a deadly weapon in December of 1990?

A. No, sir.

Q. Did alcohol play a part in your assaulting Ms. McPhaul by pointing a gun in December of 1990?

A. No, sir.

Q. And did alcohol play a part in your assaulting Ms. McPhaul in February of 1990?

A. No, sir.

Q. The alcohol had no effect on your assaulting her during those times?

A. No, sir.

Q. But you had been drinking?

A. I can't really say "yes" that far back.

Q. You can't say "yes"?

A. Yeah. I can't say "yes" to that.

Q. You can't say "no"?

A. Can't say "no."

Though he objected out of the presence of the jury before this line of questioning began, defendant's attorney did not object during the actual exchange. After the presentation of all the evidence, the jury found defendant guilty of first-degree statutory sexual offense and indecent liberties with a child. The trial court then entered judgment accordingly.

In a unanimous opinion filed on 7 July 2009, the Court of Appeals granted defendant a new trial. *State v. Ray*, —— N.C. App. ——, 678 S.E.2d 378 (2009). That court determined, *inter alia*, that the trial court erred by admitting into evidence defendant's testimony regarding his assaultive behavior in 1990. *Id.* at ——, 678 S.E.2d at 381-82. Further, the Court of Appeals concluded that defendant had demon-

strated prejudice under N.C.G.S. § 15A-1443(a), entitling him to a new trial. *Id.* at ——, 678 S.E.2d at 384. We allowed the State's petition for discretionary review on the issue whether the Court of Appeals erred by granting defendant a new trial based on the admission of his testimony regarding his prior assaultive behavior.

Generally speaking, the appellate courts of this state will not review a trial court's decision to admit evidence unless there has been a timely objection. *State v. Thibodeaux*, 352 N.C. 570, 581-82, 532 S.E.2d 797, 806 (2000), *cert. denied*, 531 U.S. 1155, 121 S. Ct. 1106, 148 L. Ed. 2d 976 (2001).[1] To be timely, an objection to the admission of evidence must be made "at the time it is actually introduced at trial." *Id.* at 581, 532 S.E.2d at 806 (emphasis omitted). It is insufficient to object only to the presenting party's forecast of the evidence. *Id.* As such, in order to preserve for appellate review a trial court's decision to admit testimony, "objections to [that] testimony must be contemporaneous with the time such testimony is offered into evidence" and not made only during a hearing out of the jury's presence prior to the actual introduction of the testimony. *Thibodeaux*, 352 N.C. at 581-82, 532 S.E.2d at 806 (citations omitted).

In the case *sub judice* defendant objected to the admission of evidence regarding his 1990 assaultive behavior only during a hearing out of the jury's presence. In other words, defendant objected to the State's forecast of the evidence, but did not then subsequently object when the evidence was "actually introduced at trial." *Id.* at 581, 532 S.E.2d at 806 (emphasis omitted). Thus, defendant failed to preserve for appellate review the trial court's decision to admit evidence regarding his 1990 assaultive behavior. *See id.* Moreover, defendant lost his remaining opportunity for appellate review when he failed to argue in the Court of Appeals that the trial court's admission of this

1. Following this Court's opinion in *Thibodeaux*, "the General Assembly amended N.C. Rule of Evidence 103(a) to provide that once the trial court makes 'a definitive ruling on the record admitting or excluding evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve a claim of error for appeal.' " *State v. Augustine*, 359 N.C. 709, 731, 616 S.E.2d 515, 531 (2005) (citing Act of May 21, 2003, ch. 101, 2003 N.C. Sess. Laws 127, 127), *cert. denied*, 548 U.S. 925, 126 S. Ct. 2980, 165 L. Ed. 2d 988 (2006). However, in *State v. Oglesby* this Court held that the 2003 amendment to Rule 103(a) is unconstitutional, "to the extent it conflicts with Rule of Appellate Procedure 10(b)(1)." 361 N.C. 550, 554, 648 S.E.2d 819, 821 (2007). In *Oglesby* we explained that this Court "has consistently interpreted" Appellate Rule 10(b)(1) "to provide that a trial court's evidentiary ruling on a pretrial motion is *not* sufficient to preserve the issue of admissibility for appeal unless a defendant renews the objection during trial." *Id.* (citations omitted). Therefore, we consider the statements taken from *Thibodeaux* and referenced herein an accurate statement of the current law.

testimony amounted to plain error. 352 N.C. at 582, 532 S.E.2d at 806 (citing, *inter alia*, N.C. R. App. P. 10(c)(4)). Accordingly, the Court of Appeals erred by reaching the merits of defendant's arguments on this issue. *Id.*

However, even if defendant had by timely objection preserved for appellate review the decision to admit this portion of his testimony, he would not be entitled to a new trial. To receive a new trial based upon a violation of the Rules of Evidence, a defendant must show that the trial court erred and that there is a "reasonable possibility" that without the error "a different result would have been reached at the trial." N.C.G.S. § 15A-1443(a) (2009); *see also State v. Mason*, 317 N.C. 283, 291, 345 S.E.2d 195, 200 (1986) ("[B]efore the defendant is entitled to any relief on appeal, he must show that he was prejudiced by the [trial court's] error." (citing N.C.G.S. § 15A-1443(a))). Essentially, defendant argues that the trial court erred by allowing the State to attempt to elicit his testimony regarding his 1990 assaultive behavior pursuant to Rule of Evidence 404(b). Initially we note that the trial court may not have erred in allowing the State to elicit evidence of defendant's prior conduct under Rule 404(b) as some proof of motive and intent. However, we need not resolve that question to dispose of the case *sub judice*. Accordingly, we simply assume *arguendo* that the trial court erred by admitting this evidence and proceed to determine the impact of this evidence on the jury's verdict.

The jury essentially failed to obtain any new information from defendant's testimony about which he now complains. During the portion of the State's examination at issue, the State questioned defendant about the connection between his consuming alcohol and his past assaultive behavior, specifically several assaults on Ms. Brenda McPhaul in 1990. Though defendant responded in the negative to most of the State's questions, it appears that the most the jury learned from this exchange was that defendant has in the past made poor decisions after consuming alcohol and that he has engaged in assaultive behavior. However, prior to the portion of defendant's testimony at issue, defendant told the jury about his past convictions for driving while impaired and assault with a deadly weapon, admissions that reflect both a prior exercise of poor judgment after using alcohol and past assaultive behavior. Thus, the jury essentially learned nothing more during the challenged exchange than it had already learned earlier in his testimony.

**STATE v. RAY**

[364 N.C. 272 (2010)]

Defendant was not prejudiced by the admission of this portion of his testimony. As the jury learned nothing new during this exchange regarding defendant's prior conduct, there is not a "reasonable possibility" of a different outcome at trial without the admission of this testimony. This is especially true in light of the following substantial evidence of defendant's guilt: the victim's trial testimony, the consistency of her trial testimony and her description of the events to Det. Rugg and Dr. Loughlin, L.G.'s characterization of defendant's penetration of her as painful, Dr. Loughlin's testimony that L.G.'s history was "consistent with her being sexually abused," and the fact that L.G. contracted a UTI. As such, even assuming the challenged portion of defendant's testimony was admitted in error, it did not prejudice him, and defendant is not entitled to a new trial.

We reverse the decision of the Court of Appeals that defendant is entitled to a new trial. The additional issues considered by the Court of Appeals are not before us, and its decisions as to those matters therefore remain undisturbed. This case is remanded to the Court of Appeals for further remand to the Superior Court, Hoke County, for further proceedings not inconsistent with this opinion.

REVERSED IN PART AND REMANDED.

Justice HUDSON dissenting.

I would conclude that the State waived its preservation argument by neglecting to raise it below, specifically by failing to either cross-assign it as error in accordance with the then-applicable version of North Carolina Rule of Appellate Procedure 10(d) or to make the argument in its brief to the Court of Appeals. I would further conclude that admission of the cross-examination testimony regarding the 1990 assaults violated Rule 404(b) and resulted in reversible error warranting a new trial. Therefore, I respectfully dissent.

At the time of defendant's appeal, North Carolina Rule of Appellate Procedure 10(d) provided, in pertinent part:

(d) *Cross-assignments of error by appellee.* Without taking an appeal an appellee may cross-assign as error any action or omission of the trial court which was properly preserved for appellate review and which deprived the appellee of an alternative basis in law for supporting the judgment, order, or other determination from which appeal has been taken.

N.C. R. App. P. 10(d).[2] Here, it is undisputed that defendant asserted in his assignments of error that the admission of his cross-examination testimony regarding the 1990 assaults violated Rule 404(b).[3] In his brief he set forth the standard of review as abuse of discretion and argued that its erroneous admission resulted in prejudicial error under N.C.G.S. § 15A-1443(a). Despite this, the State neglected to assert, either in a cross-assignment of error or in its brief to the Court of Appeals, that defendant had waived his Rule 404(b) argument by not assigning or arguing plain error in the record on appeal or his brief. This argument would have provided an alternative basis for the relief sought by the State—in fact, the basis for the relief it now seeks. Instead, the State simply responded to the defendant's argument by maintaining that there was no abuse of discretion—even though arguing that defendant waived the issue would have been simpler. As a result, the Court of Appeals did not address the issue of waiver or plain error, as the State now argues.

Based on earlier cases, I conclude it is not our role to allow the State another, different bite of the apple by permitting it to present, for the first time, an argument it did not make below. *See Pearce v. Am. Defender Life Ins. Co.*, 316 N.C. 461, 467, 343 S.E.2d 174, 178 (1986) ("Petitioners whose cases come before this Court on discretionary review are limited by Rule 16 of the North Carolina Rules of Appellate Procedure to those questions they have presented in their briefs to the Court of Appeals. Because these causes of action were not argued to that court, they are not properly before us."); *see also Rowan Cty. Bd. of Educ. v. U.S. Gypsum Co.*, 332 N.C. 1, 21-22, 418 S.E.2d 648, 661 (1992) (same) (citing *Pearce*, 316 N.C. at 467, 343 S.E.2d at 178); *State v. Fuller*, 196 N.C. App. 412, 418, 674 S.E.2d 824, 829 (2009) (concluding that because the trial court had not denied the defendant's motion to suppress based on lack of standing and the State had not cross-assigned standing as an "alternative basis for upholding the trial court's order" under Appellate Rule 10(d), the State failed to preserve its argument for appellate review (citation

---

2. Although the current version of North Carolina Rule of Appellate Procedure 10(c) eliminated cross-assignments of error and allows an appellee to "list proposed issues on appeal in the record on appeal," an appellee still must have "properly preserve[d]" these issues "for appellate review" by raising them below. N.C. R. App. P. 10(c).

3. The State had attempted unsuccessfully to offer these 1990 incidents under North Carolina Rule of Evidence 609; any convictions resulting therefrom were ruled too remote in time to be admissible. *State v. Ray*, —— N.C. App. ——, ——, 678 S.E.2d 378, 381 (2009).

omitted)). I would conclude that by not raising the issue until its petition for discretionary review to this Court,[4] the State has waived the argument it makes now. *Cf. State v. Horner*, 310 N.C. 274, 283, 311 S.E.2d 281, 287 (1984) (stating that "[a] party may waive statutory or constitutional provisions by . . . conduct inconsistent with a purpose to insist upon it" and declining to apply plain error review to alleged jury instruction error (citations omitted)). Similarly, I would decline to review this case for plain error, but would analyze it, if at all, to see if the Court of Appeals correctly saw error and prejudice.

Turning to the substance, I would conclude that the Court of Appeals correctly held that admission of the cross-examination testimony here clearly violated Rule 404(b). That court addressed the issue under the standard of review argued by both parties—whether there was an abuse of discretion. *Ray*, —— N.C. App. at ——, 678 S.E.2d at 384. Out of the presence of the jury, the State asked the court during the trial to permit it to cross-examine defendant regarding assaults he had committed against his former girlfriend, Brenda McPhaul (McPhaul), in 1990. The State argued that the 1990 incidents established defendant's motive and intent to commit the 2005 crimes, specifically asserting "he had too much to drink as he has in the past, and he assaulted a woman, which is a child, yes, but . . . she is still a woman, and he assaulted her in an aggressive way, the same way he assaulted other women in aggressive ways after drinking." The State indicated[5] that McPhaul stated that all the 1990 incidents occurred while she and defendant were dating and typically involved her confronting defendant with rumors of his infidelity upon his return home from drinking with friends. The confrontations led to fights, some initiated by McPhaul and some initiated by defendant. McPhaul further stated that: defendant never "seriously injured" her or sexually assaulted her; she had tried to hurt him during some of these altercations; her then minor children never indicated that defendant had "abuse[d them] in any way"; and she and defendant ended their relationship in or around December 1990 after he pulled a gun on her at a party "because she was seeing someone else." Ultimately, the trial

---

4. Although this Court accepted this case for discretionary review, this area of the law is well settled; it is difficult for me to see how this issue meets any of the statutory criteria for review.

5. The State informed the trial court that McPhaul was reluctant to communicate any details regarding the 1990 incidents and that it had to subpoena her in order to interview her and obtain a statement. McPhaul did not testify at trial, and the details that the State provided to the court regarding the incidents were purportedly derived from the pretrial interview.

court ruled that the State could cross-examine defendant regarding the as-described, 1990 assaults to establish his motive and intent to sexually assault a seven year old child and that the probative value outweighed any prejudicial effect.

Rule 404(b) reads in pertinent part

> (b) *Other crimes, wrongs, or acts.*—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

N.C.G.S. § 8C-1, Rule 404(b) (2009). We recently described the potential dangers of this kind of evidence in *State v. Carpenter*, 361 N.C. 382, 646 S.E.2d 105 (2007):

> When evidence of a prior [bad act] is introduced, the natural and inevitable tendency for a judge or jury is to give excessive weight to the vicious record . . . thus exhibited and either to allow it to bear too strongly on the present charge or to take the proof of it as justifying a condemnation, irrespective of the accused's guilt of the present charge. Indeed, [t]he dangerous tendency of [Rule 404(b)] evidence to mislead and raise a legally spurious presumption of guilt requires that its admissibility should be subjected to strict scrutiny by the courts.

*Id.* at 387-88, 646 S.E.2d at 109-10 (third and fourth alterations in original) (citations and internal quotation marks omitted).

Even though Rule 404(b) is often described as a "general rule of inclusion," several limitations have been placed on the admission of such evidence because "of the perils inherent in introducing prior [bad acts] under Rule 404(b)." *Id.* at 388, 646 S.E.2d at 110; *State v. Lynch*, 334 N.C. 402, 412-13, 432 S.E.2d 349, 354-55 (1993) (citations omitted). The prior bad act "must be relevant to the currently alleged crime." *Carpenter*, 361 N.C. at 388, 646 S.E.2d at 110 (citing N.C.G.S. § 8C-1, Rules 401 and 402 (2005)). Additionally, the prior bad acts' admission "is constrained by the requirements of similarity and temporal proximity." *State v. Al-Bayyinah*, 356 N.C. 150, 154, 567 S.E.2d 120, 123 (2002) (citations omitted). Regarding the "similarity" requirement, "[e]vidence of a prior bad act generally is admissible under Rule 404(b) if it constitutes substantial evidence tending to support a reasonable finding by the jury that the defendant committed the

*similar* act." *Id.* at 155, 567 S.E.2d at 123 (citations and internal quotation marks omitted). "Finally, . . . the trial court must balance the danger of undue prejudice against the probative value of the evidence, pursuant to [North Carolina] Rule [of Evidence] 403." *Carpenter*, 361 N.C. at 388-89, 646 S.E.2d at 110 (citing N.C.G.S. § 8C-1, Rule 403 (2005)).

At most, the purported similarities between the 1990 incidents and the 2005 incident are merely generic. This Court has stated: "When the State's efforts to show similarities between crimes establish no more than 'characteristics inherent to most' crimes of that type, the State has 'failed to show . . . that sufficient similarities existed' for the purposes of Rule 404(b)." *Id.* at 390, 646 S.E.2d at 111 (quoting *Al-Bayyinah*, 356 N.C. at 155, 567 S.E.2d at 123 (alteration in original)). At worst, they relate solely to defendant's purported bad character, to show that he "acted in conformity" with a propensity to commit bad acts, which is expressly forbidden by Rule 404(b). N.C.G.S. § 8C-1, Rule 404(b). Given that defendant denied that alcohol played a role, his testimony undercut the State's proffered theory that alcohol was the triggering factor (motive) in the 1990 incidents. Thus, admissibility of the evidence at issue even for that purpose falters. Further, as described by the State during the bench conference, the 1990 incidents are not similar at all to the 2005 incident for which defendant was on trial, except to show a propensity for assaultive behavior. The 1990 assaults involved violent incidents between two adults involved in a relationship, occurring fifteen years before the alleged 2005 crimes. They do not involve any assault, sexual or otherwise, on a seven year old child or share any additional factual similarities with the 2005 incident. As such, " 'substantial evidence of similarity among the prior bad acts and the crimes charged is . . . lacking.' " *Carpenter*, 361 N.C. at 391, 646 S.E.2d at 112 (quoting *Al-Bayyinah*, 356 N.C. at 155, 567 S.E.2d at 123 (alteration in original)). Given the lack of similarity, the temporal distance between the incidents assumes even greater importance. *See, e.g.*, *State v. Artis*, 325 N.C. 278, 300, 384 S.E.2d 470, 482 (1989) ("Attenuated by time, the pertinence of evidence of prior offenses attaches to the defendant's character rather than to the offense for which he is on trial. In other words, remoteness in time tends to diminish the probative value of the evidence and enhance its tendency to prejudice."), *judgment vacated on other grounds*, 494 U.S. 1023, 108 L. Ed. 2d 604 (1990). Further, any arguably "slight" probative value of this evidence is substantially outweighed by the danger of unfair prejudice, namely the "substantial likelihood that the jury w[ould] consider the evidence

STATE v. RAY

[364 N.C. 272 (2010)]

only for the purpose of determining the defendant's propensity to commit the crimes with which he ha[d] been charged." *State v. White,* 331 N.C. 604, 615-16, 419 S.E.2d 557, 564 (1992) (citation omitted), *cert. denied,* 519 U.S. 936, 136 L. Ed. 2d 229 (1996).

Finally, defendant has shown "a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." N.C.G.S. § 15A-1443(a) (2009). The majority brushes off the prejudicial effect of this erroneously admitted character evidence, stating that "the most the jury learned from this exchange was that defendant has in the past made poor decisions after consuming alcohol and that he has engaged in assaultive behavior." Noting that the jury also learned that defendant had prior convictions for driving while impaired and assault with a deadly weapon, the majority concludes that "the jury essentially learned nothing more during the challenged exchange than it had already learned earlier in his testimony." In doing so, the majority overlooks the most damaging matter the jury learned from this evidence—that defendant had assaulted a female of an unspecified age multiple times, including with a gun—which was certain to damage him in the eyes of the jury. Close examination of the record reveals that defendant's credibility was critical to his defense, given the lack of physical evidence.[6] The State's only witnesses were a law enforcement officer, an investigator with the district attorney's office, the medical doctor who saw the alleged victim two months after the alleged incident, and the young girl. Defendant took the stand and denied any assault. In my view, the Court of Appeals correctly concluded that "[a]gainst th[e] backdrop of evidence" in this case, which was not overwhelming, "the jury's assessment of the relative credibility of L.G. and the Defendant assumed crucial significance." *Ray,* —— N.C. App. at ——, 678 S.E.2d at 384. In light of the well-recognized dangers and prejudice that easily flow from propensity evidence of the type admitted here, I would affirm the Court of Appeals' decision to award defendant a new trial.

For these reasons I respectfully dissent.

Chief Justice PARKER and Justice TIMMONS-GOODSON join in this dissenting opinion.

---

6. In fact, during the bench conference on the admissibility of the 1990 assaults under Rule 404(b), the State explicitly acknowledged: "[T]he only two issues in this case are credibility of witnesses and motive; who to believe and why would [defendant] have done this."