IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-561

No. COA22-107

Filed 16 August 2022

Cumberland County, No. 18 CRS 59381

STATE OF NORTH CAROLINA

v.

AKEEM DEVONTE MCIVER, Defendant.

Appeal by Defendant from judgment entered 16 July 2021 by Judge Gale M. Adams in Cumberland County Superior Court. Heard in the Court of Appeals 8 June 2022.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Joseph L. Hyde, for the State.*

*Glover & Petersen, P.A., by James R. Glover, for Defendant-Appellant.*

WOOD, Judge.

¶ 1 Akeem Devonte McIver ("Defendant") appeals his conviction of first degree murder. On appeal, Defendant argues the trial court erred or plainly erred by 1) allowing an expert to testify about the location of Nakeshia Washington's ("Washington") and his cell phones, and 2) instructing the jury on flight. After a careful review of the record and applicable law, we conclude Defendant received a fair trial free from error.

## I. Factual and Procedural Background

¶ 2 On the evening of July 16, 2018, Antonio Johnson ("Johnson") visited Defendant at Defendant's house. Johnson drove his girlfriend's white Dodge Charger, which she permitted him to use while she worked a 12 hour shift at the hospital. When Johnson arrived at Defendant's house, Defendant entered the Dodge Charger, sat in the car, and asked Johnson to drive him to visit Alkeen Hair ("Hair").

¶ 3 Defendant and Johnson arrived at Hair's residence around 8:00 p.m. Defendant, Johnson, and Hair talked for a few minutes and then Hair asked Johnson to drive him to Cattail, a location across the river. Johnson agreed and drove Defendant and Hair to Cattail. Approximately one hour later, Hair asked Johnson if he could "take him to go get some weed." Hair offered to give Johnson gas money and some weed for driving him. Johnson agreed, and the three men got back into the Dodge Charger with Johnson driving, Defendant sitting in the front seat, and Hair sitting in the back.

¶ 4 Hair directed Johnson to Washington's house to get the marijuana. Washington lived in a house owned by her mother, Vickey McArthur ("McArthur"), on Slater Avenue in Fayetteville, North Carolina. The house was located across the street from McArthur. Washington was known to sell marijuana in mason jars from this residence and had just received a new shipment of marijuana. When Defendant, Johnson, and Hair arrived at Washington's house, Hair directed Johnson not to park

directly in front of the house, because Washington "don't [sic] like just anybody pulling up in front of the house . . . ." Johnson parked a "[c]ouple hundred yards[]" from Washington's house. Defendant and Hair exited the car around 9:40 p.m.

¶ 5         Washington was on the phone with a friend when they arrived. While they were speaking, Washington began saying, "who is it, who is it[]" followed by several gun shots before the phone call was terminated.

¶ 6         McArthur was at home that evening. At approximately 9:45 p.m., McArthur heard gunshots she believed to be coming from her daughter's house. She stepped outside to find the source of the sound, looked towards Washington's house, and saw two men leaving Washington's porch. According to McArthur, one man was "a dark-skinned tall male, male or boy, with dreads, blue jeans, white sneakers, hair hat on, blue jeans." McArthur realized she had seen this man "several mornings" at Washington's house. At trial, McArthur identified Defendant as the man she had seen leaving her daughter's porch that night. As McArthur approached her daughter's house, she simultaneously heard one of the men, later identified as Hair, say "Hurry up. Come on 'cause she gonna call the police[]" and saw Washington lying on the sidewalk in front of her house. McArthur saw Defendant and Hair run away from Washington's house, enter a white Dodge Charger, and drive away towards Murchison Road. Another neighbor also observed two black males fleeing the scene with one holding "a cellphone that was glowing." McArthur immediately dialed 911

and attempted to flag down a police officer. MacArthur had purchased an iPhone for Washington prior to the date of the shooting but did not see the iPhone in Washington's house after the shooting occurred.

¶ 7 Meanwhile, Johnson, who had waited in the Dodge Charger, heard gunshots coming from "the direction that . . . [Defendant and Hair] walked in." He "turned the car on and slowly crept around the corner." Hair then ran up to the Dodge Charger and got into the back seat while holding a mason jar of weed. Approximately ten seconds later Defendant also got into the Dodge Charger. Johnson then "pulled off kind of fast" from the scene towards Murchison Road.

¶ 8 Hair directed Johnson to drive to Hair's girlfriend's trailer which was located across the river. On the way there, Hair pulled out a loaded gun and handed it to Defendant, who then placed the gun in the Dodge Charger's console. According to Johnson, Defendant kept asking McIver, "[w]hat the f*** you got going on? What type time you on?" over and over.[1] The three men drove for about ten to twenty minutes, reached Johnson's girlfriend's trailer, and went inside to smoke marijuana from the mason jar Hair had acquired from Washington's house. They stayed there for about an hour and then Johnson drove Hair and Defendant back to their houses before returning to his own house.

---

[1] At trial, Johnson explained "[w]hat type time you on?" means "what you got going through your mind, like what's going on with you?"

¶ 9 Meanwhile, McArthur got the attention of Officer Percy Evans ("Officer Evans") of the Fayetteville Police Department who was patrolling the area. McArthur told Officer Evans that Washington had been shot, and Officer Evans then ran over to Washington and saw her lying on the ground, bleeding from her mouth. Officer Evans immediately called for Emergency Medical Services ("EMS"), the fire department, and police back up, and he attempted to administer first aid. EMS arrived and declared Washington was "deceased on scene." Diana Engel, ("Engel"), a forensic technician, photographed the scene and collected evidence at Washington's house that same evening.

¶ 10 Fayetteville Police Department Homicide detectives arrived on the scene; and after obtaining a search warrant, began an investigation. Inside Washington's house, Detectives determined that the gunshots had been fired within the entrance to Washington's house and gathered several spent 9mm and .40 shell casings. However, Washington's iPhone was not located during their search of the property.

¶ 11 Johnson continued to drive around in the white Dodge Charger while his girlfriend was at work. After noticing that police officers were asking questions about the Dodge Charger, he attempted to conceal it within a wood-lined area behind an apartment complex on Caledonia Drive. Police officers ultimately found the Dodge Charger where Johnson had attempted to conceal it.

¶ 12 On July 16, 2018, Defendant was indicted for first degree murder and robbery

with a dangerous weapon. On June 28, 2021, Defendant filed a motion *in limine* to exclude evidence of the GeoTime Report and the testimony of investigative assistant William Potter ("Potter") asserting it lacks proper evidentiary foundation, uses multiple cell towers, contains prejudicial hearsay, and contains conclusory references and statements.

¶ 13        This case came on for jury trial from July 12 to July 16, 2021. At trial, Potter, an investigative assistant with the homicide unit of Fayetteville Police Department, testified on behalf of the State. When the State tendered Potter as an expert in cell phone analytics, Defendant's counsel was allowed to *voir dire* outside of the presence of the jury. After *voir dire* and still outside the presence of the jury, Defense counsel objected to Potter being accepted by the trial court as an expert. The trial court overruled Defendant's objection and accepted Potter as an expert. Potter testified he used GeoTime, based off the call record of Johnson's and Washington's cell phones, to plot the respective locations of their phones at various points of time before and after the shooting. Defense counsel did not object to Potter's testimony during examination or in the presence of the jury. At the end of Potter's testimony and cross-examination, the court stated, in the presence of the jury, "put it on the record so that it is in front of the jury that the objection was overruled as to Mr. Potter being tendered and accepted as an expert."

¶ 14        The jury found Defendant guilty of first-degree murder and robbery with a

dangerous weapon. The court sentenced Defendant to life imprisonment without parole for his first-degree murder conviction and arrested judgment on the charge of robbery with a dangerous weapon. Defendant gave oral notice of appeal in open court.

## II. Discussion

¶ 15    Defendant raises several issues on appeal; each will be addressed in turn.

### A. Expert's Testimony

¶ 16    Defendant first contends the trial court erred by allowing Potter's testimony regarding the location of Washington's and Johnson's cell phones alleging it was based on hearsay because the call detail records were never produced nor authenticated as accurate or confirmed as belonging to Washington and Johnson. We disagree.

### 1. *Standard of Review*

¶ 17    As an initial matter, Defendant contends the motion *in limine* and oral objection at the trial are sufficient to preserve his first issue for appellate review. Alternatively, Defendant contends we should review Potter's testimony under a plain error standard of review. The State, in turn, argues Defendant altogether failed to preserve his first issue.

¶ 18    The North Carolina Appellate Rules of Procedure provide, "[i]n order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the

party desired the court to make if the specific grounds were not apparent from the context." N.C.R. App. P. 10(a)(1); *see State v. Ray*, 364 N.C. 272, 277, 697 S.E.2d 319, 322 (2010) ("[T]he appellate courts of this state will not review a trial court's decision to admit evidence unless there has been a timely objection.").

¶ 19 Defendant first raises this issue concerning Potter's testimony in his motion *in limine*. It is firmly established that a "motion *in limine* is insufficient to preserve for appeal the question of the admissibility of evidence." *State v. Hill*, 347 N.C. 275, 293, 493 S.E.2d 264, 274 (1997) (internal quotation marks omitted) (quoting *State v. Conaway*, 339 N.C. 487, 521, 453 S.E.2d 824, 845 (1995)); *see Heatherly v. Industrial Health Council*, 130 N.C. App. 616, 620, 504 S.E.2d 102, 105 (1998). Rather, "[r]ulings on these motions . . . are merely preliminary and subject to change during the course of trial, depending upon the actual evidence offered at trial and thus an objection to an order granting or denying the motion 'is insufficient to preserve for appeal the question of the admissibility of the evidence.' " *Hill*, 347 N.C. at 293, 493 S.E.2d at 274 (quoting *T&T Dev. Co. v. Southern Nat'l Bank*, 125 N.C. App. 600, 602, 481 S.E.2d 347, 349 (1997)).

¶ 20 In order for an objection to admission of evidence to be considered timely it "must be made 'at the time it is actually introduced at trial.' " *Ray*, 364 N.C. at 277, 697 S.E.2d at 322 (quoting *State v. Thibodeaux*, 352 N.C. 570, 581, 532 S.E.2d 797, 806 (2000)). Thus, "to preserve for appeal matters underlying a motion in limine, the

movant must make at least a general objection when the evidence is offered at trial." *Beaver v. Hampton*, 106 N.C. App. 172, 177, 416 S.E.2d 8, 11 (1992), *aff'd in part and vacated in part on other grounds*, 333 N.C. 455, 427 S.E.2d 317 (1993); *see Hill*, 347 N.C. at 293, 493 S.E.2d at 274 ("A party objecting to an order granting or denying a motion *in limine*, in order to preserve the evidentiary issue for appeal, is required to object to the evidence at the time it is offered at the trial (where the motion was denied) or attempt to introduce the evidence at the trial (where the motion was granted.")); *Thibodeaux*, 352 N.C. at 581, 532 S.E.2d at 806. Such objections may not be made "*only* during a hearing out of the jury's presence prior to the actual introduction of the testimony." *Ray*, 364 N.C. at 277, 697 S.E.2d at 322 (emphasis added).

¶ 21     The record before us demonstrates Defendant renewed his objection to Potter's testimony during *voir dire* outside of the presence of the jury. Our Supreme Court addressed a similar issue in *State v. Ray*. There, the prosecutor informed the trial court judge outside the presence of the jury he intended to conduct a line of questioning concerning the defendant's prior conduct to prove motive and intent. *Id.* at 275, 697 S.E.2d at 321-22. Defense counsel objected at the hearing but did not object once the jury returned and the State proceeded with its line of questioning. *Id.* at 276, 692 S.E.2d at 321. Our Supreme Court held the defendant failed to preserve this issue for appellate review because he "objected to the State's forecast of the

evidence, but did not then subsequently object when the evidence was 'actually introduced at trial.' " *Id.* at 277, 697 S.E.2d at 322 (quoting *Thibodeaux,* 352 N.C. at 581, 532 S.E.2d at 806).

¶ 22        This court addressed the issue in the case *sub judice* more recently in *State v. Williams.* In *Williams,* defense counsel first objected to evidence of a prior incident before jury selection, but the trial court judge deferred its ruling until the State presented its evidence. *State v. Williams,* 253 N.C. App. 606, 612, 801 S.E.2d 169, 173 (2017), *rev'd in part and remanded,* 370 N.C. 526, 809 S.E.2d 581 (2018). When the witness began to testify about the circumstances surrounding the prior incident, the trial court took a recess, during which defense counsel reminded the trial court judge about his objection. *Id.* The session then resumed and a *voir dire* of the witness was conducted. *Id.* Ultimately, the trial court judge ruled the testimony was admissible, but defense counsel requested an exception for the record which was granted by the trial court judge. *Id.* at 612-13, 801 S.E.2d at 173. Defense counsel, however, failed to object once the jury returned and the witness testified about the incident. *Id.* at 613, 801 S.E.2d at 173-74. The majority held it "would be fundamentally unfair to fault defendant on appeal" and proceeded to review for prejudicial error. *Id.* at 613, 801 S.E.2d at 174. Judge Dillon dissented, arguing the appropriate standard of review was plain error as "[o]ur Supreme Court has held that a defendant who objects during a forecast of evidence outside the presence of the jury

does not preserve the objection *unless he objects when the testimony is offered into evidence in the jury's presence."* *Id.* at 620, 801 S.E.2d at 178 (Dillon, J. dissenting). On appeal, our Supreme Court reversed "for reasons stated in the dissenting opinion." *State v. Williams*, 370 N.C. 526, 809 S.E.2d 581 (2018) (order).

¶ 23        In this case, Defendant's objection to the admission of Potter's testimony regarding the location of Johnson's and Washington's cell phones was proffered only outside of the jury's presence. The trial court noted Defendant's objection, but only after Potter's testimony and cross-examination had concluded. Thus, an objection, if any, was not made "contemporaneous[ly] with the time . . . [Potter's] testimony . . . [was being] offered into evidence." *Thibodeaux*, 352 N.C. at 582, 532 S.E.2d at 806. We conclude Defendant merely "objected to the State's forecast of the evidence, but did not then subsequently object when the evidence was 'actually introduced at trial.' " *Ray*, 364 N.C. at 277, 697 S.E.2d at 322 (quoting *Thibodeaux*, 352 N.C. at 581, 532 S.E.2d at 806). Defendant failed to properly preserve his objection for appeal.

¶ 24        Our Supreme Court has "been clear on this point[,]" *Williams*, 253 N.C. App. at 621, 801 S.E.2d at 178 (Dillon, J. dissenting), and "we are bound by our Supreme Court's holding." *State v. Shepherd*, 156 N.C. App. 69, 72, 575 S.E.2d 776, 778 (2003); *see also In re Appeal from Civil Penalty Assessed for Violations of Sedimentation Pollution Control Act etc.*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989) ("Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a

subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court."). Therefore, we hold the proper standard of review is plain error.

### 2. *Analysis*

¶ 25    On appeal, Defendant argues the admission of Potter's testimony rises to the level of plain error. We disagree.

¶ 26    As a general rule, the plain error standard of review is applied when a defendant fails to preserve an error at trial. *See* N.C. R. App. P. 10(a)(4); *see State v. Lawrence*, 365 N.C. 506, 512, 723 S.E.2d 326, 330 (2012). A defendant has a heavier burden to show the alleged error rises to the level of plain error. *Lawrence*, 365 N.C. at 512, 723 S.E.2d at 330. Appellate courts must only apply the plain error rule where,

> after reviewing the entire record, it can be said the claimed error is a *fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done, or where the error is grave error which amounts to a denial of a fundamental right of the accused, or the error has resulted in a miscarriage of justice or in the denial to appellant of a fair trial or where the error is such as to seriously affect the fairness, integrity or public reputation of judicial proceedings or where it can be fairly said the instructional mistake had a probable impact on the jury's finding that the defendant was guilty.

*Id.* at 516-517, 723 S.E.2d at 333 (cleaned up) (quoting *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983)). To determine whether an unpreserved error was

prejudicial, an appellate court must "examine[] the entire record to determine if the . . . error had a probable impact on the jury's finding of guilt." *Id.* at 517, 723 S.E.2d at 334 (cleaned up) (quoting *Odom*, 307 N.C. at 661, 300 S.E.2d at 379).

¶ 27        Defendant is unable to meet the required burden of proof to show his alleged error was plain error. In the case *sub judice*, there was sufficient evidence presented at trial from which the jury could deduce Defendant committed the crimes of first-degree murder and robbery with a dangerous weapon. The jury heard testimony from Johnson that he drove Defendant to Washington's house, saw Defendant exit the car, and then heard the sound of gunshots approximately five minutes later from the direction Defendant had walked. He explained he observed Defendant get back into the Dodge Charger; frantically ask Hair "[w]hat the f*** you got going on? What type time you on?"; and then receive a gun from Hair. Likewise, McArthur testified she heard gunshots coming from Washington's house and saw two men leaving Washington's front porch. McArthur told the jury she recognized Defendant because she had previously seen him "several mornings" at Washington's house. McArthur further explained that she saw Washington lying in front of the front porch of the house and overheard Hair saying, "[h]urry up. Come on 'cause she gonna call the police." Furthermore, McArthur testified she had purchased an iPhone for Washington but did not see it at her daughter's house after the shooting occurred. Engel corroborated McArthur's testimony, testifying she did not see Washington's

iPhone during the search of her house.

¶ 28        In light of this evidence, we cannot say Potter's testimony had a "probable impact on the jury's finding of guilt[,]" was a "fundamental error[,]" "amount[ed] to a denial of a fundamental right" for Defendant, "resulted in a miscarriage of justice[,]" denied Defendant a fair trial, or "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings or where it can be fairly said the instructional mistake had a probable impact on the jury's finding that the defendant was guilty." *Lawrence*, 365 N.C. at 516-17, 723 S.E.2d at 333 (emphasis omitted) (quotations omitted).

**B. Jury Instruction**

¶ 29        Next, Defendant argues the trial court plainly erred on instructing the jury on flight because there was insufficient evidence presented to demonstrate he took steps to avoid apprehension. We disagree.

¶ 30        Under Rule 10 of our North Carolina Rules of Appellate Procedure, "[a] party may not make any portion of the jury charge or omission therefrom the basis of an issue presented on appeal unless the party objects thereto before the jury retires to consider its verdict." N.C. R. App. P. 10(a)(2). Defendant concedes he did not object to the challenged jury instruction. Additionally, the State asserts Defendant may have even invited his own error when he assisted with the drafting of the jury instruction and expressed satisfaction with the result. If true, we would be prohibited

from reversing for plain error. *State v. McPhail*, 329 N.C. 636, 643, 406, S.E.2d 591, 596 (1991). Nevertheless, as we explain below, Defendant would not be afforded reversal under plain error review even if the error was uninvited.

¶ 31        Applying the principles of law as discussed *supra,* we hold ample evidence exists to support the jury's finding Defendant guilty of first-degree murder. First, Johnson testified he drove Defendant and Hair to Washington's house and shortly thereafter heard gunshots from "the direction that . . . [Defendant and Hair] walked." Johnson then saw Defendant get back into the white Dodge Charger, observed Hair pull out a gun, and hand it to Defendant while Defendant repeated "[w]hat the f*** you got going on? What type time you on?" Moreover, McArthur stated at trial she heard gunshots coming from Washington's house, stepped outside to investigate the noise, and observed two men leaving Washington's porch, one of which she recognized as Defendant. As MacArthur approached Washington's house, she observed Defendant and the other man run away and get into a white Dodge Charger, and she observed Washington lying on the sidewalk.

¶ 32        In light of these testimonies and record evidence, we conclude the trial court's jury instruction on flight did not have "a probable impact on the jury's finding of" Defendant's guilt. *Lawrence*, 365 N.C. at 517, 723 S.E.2d at 334 (emphasis omitted) (quotation omitted). Therefore, we hold Defendant has not met his burden of proving the trial court committed plain error by instructing the jury on flight.

### III.    Conclusion

For the foregoing reasons, we hold Defendant has failed to meet his burden to show that the trial court committed plain error by allowing Potter's testimony or by giving the jury instruction on flight.  Therefore, we conclude Defendant received a fair trial free from error.

NO ERROR.

Judges DIETZ and MURPHY concur.