An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1103
NORTH CAROLINA COURT OF APPEALS

Filed: 17 June 2014

STATE OF NORTH CAROLINA

|  |  |
|---|---|
| v. | Orange County |
|  | Nos. 11 CRS 53479 |
| JOSHUA CHAD HONEYCUTT | 13 CRS 00020 |

Appeal by defendant from judgments entered 23 May 2013 by Judge W. Osmond Smith in Orange County Superior Court. Heard in the Court of Appeals 26 May 2014.

>*Attorney General Roy Cooper, by Assistant Attorney General Tenisha S. Jacobs, for the State.*

>*James W. Carter for defendant-appellant.*

HUNTER, Robert C., Judge.

Defendant Joshua Chad Honeycutt was tried on charges of felonious breaking or entering, larceny after breaking or entering, felonious possession of stolen property pursuant to a breaking or entering, and obtaining property by false pretenses. A jury found him not guilty of the breaking or entering and larceny charges, but guilty of possession of stolen property pursuant to a breaking or entering and of obtaining property by

false pretenses. The trial court sentenced defendant to an active prison term of six to eight months for each of the two offenses, to be served consecutively. Defendant gave notice of appeal in open court.

## I.  **The State's Evidence**

Frances Seawell testified that she and her family lived at 106 Weathervane Drive in Carrboro, North Carolina. On the afternoon of 16 September 2011, she arrived home from work to discover that the "back door had been broken in and the deadbolt lock was on the floor." Seawell immediately called 911.

When the police arrived, Seawell went to her bedroom and saw that her "standing armoire type jewelry box" had been opened, her clothing drawers "had been rifled through[,] and a travel jewelry box had been thrown across the room." Missing from the jewelry box were three gold rings and two necklaces, which she described as follows: (1) a men's 18 carat molded gold wedding band "that looked like woven branches or bones"; (2) a ladies' 14 carat gold ring with three stones, "one a lapis in the center, blue lapis stone[,] and then on . . . either side two small diamonds, round cut"; (3) "a very thin gold band probably like [10] carat" with a missing stone; (4) a "short, . . . herringbone kind of gold chain"; and (5) a "very fine link

chain." Seawell owned the jewelry and had not given anyone permission to take it. None of the missing jewelry was recovered.

In addition to reporting the theft to police, Seawell made a flyer containing a photograph of the wedding band and showed it to local merchants who purchased gold jewelry. A copy of the flyer was admitted into evidence and published to the jury.

John Bolton testified that he lived with defendant in defendant's mother's house at 2907 Green Hill Drive "for about a month" from the first week in September through the first week in October 2011. On 16 September 2011, after eating breakfast, Bolton and defendant "borrowed his mother's car to go ride around and break in some houses." They drove around Hillsborough or Chapel Hill without success before proceeding to Carrboro. Bolton described their subsequent actions as follows:

> [W]e got down North Greensboro Street to Weathervane. We stopped on Weathervane. [I g]ot out of the car. Found one of the first houses on the right right as you went into the subdivision. Kicked the back door in. Grabbed jewelry. [Defendant] picked me back up. We went to Scavenger Antiques in Carrboro and then [defendant] sold the jewelry and that was it.

Bolton affirmed that defendant sold the stolen jewelry at Scavenger Antiques on the same day that the break-in on

Weathervane Drive occurred. Bolton also confirmed that "the jewelry that [he] stole from kicking in the back door of 106 Weathervane . . . [was] the jewelry that [he] gave to [defendant] when [he] went to Scavenger Antiques[,]" and that defendant "took into Scavenger Antiques with him and came out with $500[.00.]" Bolton described one of the pieces of jewelry stolen from 106 Weathervane Drive as a "[v]ery large male wedding band about 14 carats" that "looked like it was cracked around the design in it." When shown the photograph on the flyer Seawell posted following the break-in, Bolton testified, "That's the ring from 106 Weathervane."

Bolton was arrested at Scavenger Antiques on 20 October 2011. At the time of defendant's trial, Bolton was serving a prison sentence of 64 to 80 months after pleading guilty to "14 breaking and enterings and 13 larcenies after breaking and entering[,]" including the break-in at 106 Weathervane on 16 September 2011. After entering this plea, Bolton was charged with one additional count each of felonious breaking or entering and larceny. The trial court advised the jury that Bolton's pending plea agreement on these charges provided for a consolidated sentence of 10 to 21 months, concurrent with the sentence he was then serving, "[i]n return for Mr. Bolton's

agreement to testify truthfully" at defendant's trial.

Lieutenant Randy Hawkins of the Orange County Sheriff's Office, who interviewed Bolton on 28 October 2011, corroborated Bolton's testimony about the 16 September 2011 break-in at 106 Weathervane Drive. Bolton told Hawkins "that [he] and [defendant] did this break-in and that they stole a male wedding band . . . [a]nd some other jewelry." Before Bolton directed Hawkins to this address, the sheriff's office was unaware that the break-in had occurred.

In the course of his investigation, Carrboro Police Officer Tony Frye interviewed the co-owner of Scavenger Antiques, Becky Wiggs, who provided him with two hand-written ledgers in which the store recorded its gold and silver purchases. The ledger page from 16 September 2011 contained an entry for defendant, Joshua Honeycutt, which listed his address as 2907 Green Hill Drive and also included his driver's license number. The entry reflects that Scavenger Antiques paid defendant $500.00 on 16 September 2011 for the following items: "Two 14K gold chains, one 10K small gold ring without stone, one larger 14K gold woven ring, one 14K gold ring with small stone and larger stone removed." A copy of this ledger page was received into evidence and published to the jury. Wiggs stated that these entries were

"entirely my handwriting except for the individual who signed it."

Wiggs identified defendant in court as the person who sold her the items listed in the ledger on 16 September 2011. Defendant told Wiggs that he had "acquired" the jewelry "by going to different sales, yard sales; or people had things for sale, looking and finding in – drawers." Wiggs "never suspected anything that was not right" and sold the jewelry in the regular course of business.

The State introduced eight additional pages from the ledger reflecting defendant's sale of items to Scavenger Antiques on 18, 25, and 29 July 2011, 26 August 2011, 9 and 21 September 2011, and 4 and 12 October 2011. When Frye asked defendant about these transactions, he claimed to have purchased the gold at various "yard sales all over" but "wouldn't be specific as to what cities or what dates."

## II. **Motion to Dismiss**

Defendant first challenges the trial court's denial of his motion to dismiss the charges at the conclusion of the evidence. A motion to dismiss based on insufficient evidence is reviewed under the following standard:

> The trial court must determine only whether there is substantial evidence of each

essential element of the offense charged and of the defendant being the perpetrator of the offense. Evidence is substantial if it is relevant and adequate to convince a reasonable mind to accept a conclusion. In considering a motion to dismiss, the trial court must analyze the evidence in the light most favorable to the State and give the State the benefit of every reasonable inference from the evidence. The trial court must also resolve any contradictions in the evidence in the State's favor. The trial court does not weigh the evidence, consider evidence unfavorable to the State, or determine any witness' credibility.

*State v. Parker*, 354 N.C. 268, 278, 553 S.E.2d 885, 894 (2001) (citations and quotation marks omitted). "This Court reviews the trial court's denial of a motion to dismiss *de novo*." *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007).

As proscribed by N.C. Gen. Stat. § 14-72(b)-(c) (2013), the crime of possession of stolen property pursuant to a breaking or entering consists of the following: (1) possession (2) of personal property stolen pursuant to a breaking or entering; (3) knowing or having "reasonable grounds to believe" that the property was stolen pursuant to a breaking or entering; and (4) acting with a dishonest purpose. *State v. Tanner*, 364 N.C. 229, 232-33, 695 S.E.2d 97, 100 (2010) (quoting N.C. Gen. Stat. § 14-72(c)). "Dishonest purpose is equivalent to felonious intent." *State v. Withers*, 111 N.C. App. 340, 348, 432 S.E.2d 692, 698

(1993) (citation omitted). The essential elements of obtaining property by false pretenses under N.C. Gen. Stat. § 14-100(a) (2013) are "'(1) a false representation of a subsisting fact or a future fulfillment or event, (2) which is calculated and intended to deceive, (3) which does in fact deceive, and (4) by which one person obtains or attempts to obtain value from another.'" *Parker*, 354 N.C. at 284, 553 S.E.2d at 897 (quoting *State v. Cronin*, 299 N.C. 229, 242, 262 S.E.2d 277, 286 (1980)).

Viewed in the light most favorable to the State, the evidence shows that defendant assisted Bolton in breaking into the residence at 106 Weathervane Drive for the purpose of stealing jewelry. Defendant then sold the jewelry taken by Bolton to Scavenger Antiques for $500.00, telling Wiggs that he had purchased the items at various yards sales or similar events. We hold that this constitutes substantial evidence of each essential element of the two crimes found by the jury.

Defendant argues that the State failed to show that the three gold rings and two gold necklaces he sold to Scavenger Antiques were the same three gold rings and two gold necklaces stolen by Bolton from 106 Weathervane Drive the same day. We disagree. The descriptions of the jewelry entered by Wiggs into Scavenger Antiques' ledger on 16 September 2011 closely

correspond to the missing items described by Seawell. Moreover, Bolton identified the wedding band he stole from 106 Weathervane Drive as the ring shown in Seawell's flyer. He further testified that the items defendant sold to Scavenger Antiques for $500.00 on 16 September 2011 were the items taken from 106 Weathervane Drive. Insofar as defendant separately challenges the evidence that he misrepresented himself as the owner of the jewelry, we conclude that Wiggs's testimony and the entries in her store's ledger on 16 September 2011 were more than sufficient to show the "false representation" by defendant required to establish his obtaining the $500.00 by false pretenses.

### III. **Rule 404(b) Evidence**

Defendant next claims the trial court erred by allowing Bolton to testify about other residential break-ins he committed with defendant in Orange County within a month of the 16 September 2011 incident. *See* N.C. Gen. Stat. § 8C-1, Rule 404(b) (2013). Defendant argues the State failed to prove that he engaged in these other acts, inasmuch as he had not been charged with additional crimes. He further contends that "the State did not specifically put forth any purpose" for admitting the evidence as contemplated by Rule 404(b). Finally, to the

extent Bolton's testimony was admissible under Rule 404(b), defendant argues that its probative value was outweighed by the risk of unfair prejudice, thus requiring its exclusion under N.C. Gen. Stat. § 8C-1, Rule 403 (2013).

## A. **Waiver**

We first address the State's assertion that defendant has failed to preserve his objection to this evidence by means of a timely objection at trial. *See* N.C. R. App. P. 10(a)(1) (2013). Generally, neither a motion *in limine* nor an objection during *voir dire* at trial will suffice to preserve the issue of the admissibility of evidence. *State v. Flaugher*, 214 N.C. App. 370, 375, 713 S.E.2d 576, 582 (2011) (quoting *State v. Ray*, 364 N.C. 272, 277, 697 S.E.2d 319, 322 (2010)) ("'[T]o preserve for appellate review a trial court's decision to admit testimony, "objections to [that] testimony must be contemporaneous with the time such testimony is offered into evidence" and not made only during a hearing out of the jury's presence prior to the actual introduction of the testimony.'") (second alteration in original).

Here, the trial court declined to grant defendant's pre-trial motion *in limine* and ruled on *voir dire* at trial that Bolton's testimony about other break-ins was admissible under

Rule 404(b). Defendant raised only a single general objection before the jury when the prosecutor asked Bolton whether defendant was "with you on every one of those occasions" that had resulted in Bolton's incarceration. The court overruled the objection, and Bolton replied, "He was with me for some of them." Defendant did not purport to raise a continuing or line objection to this line of inquiry. *See State v. Lawson*, 173 N.C. App. 270, 274, 619 S.E.2d 410, 412-13 (2005). Nor did he object to Bolton's subsequent testimony about defendant's participation in three additional break-ins or the "[a]t least three or four more times" when Bolton "went to Scavenger Antiques with [defendant] to get rid of the jewelry." It thus appears defendant may have failed to preserve his objection to Bolton's testimony. *See Ray*, 364 N.C. at 277, 697 S.E.2d at 322.

Despite defendant's noncompliance with Rule 10(a)(1), we believe it would be unjust to enforce any resulting waiver in this case. The transcript reflects that the trial court made the following announcement to the parties at the conclusion of the *voir dire* hearing:

> [T]he Court rules that the evidence is admissible under Rule 404(b) for purposes of which I've just stated and should not be excluded under Rule 403.

> The defendant has objected to it in advance.
> Still objects to it *and exceptions are noted
> and preserved.*

(Emphasis added). Having been advised by the court that his exceptions were preserved, it is understandable that defense counsel would not feel obliged to renew his objections in front of the jury. Therefore, we will invoke our discretionary authority under N.C. R. App. P. 2 to review defendant's claim to the extent that we need to do so. *See State v. Brown*, 178 N.C. App. 189, 192, 631 S.E.2d 49, 52 (2006).

### B. *Voir Dire*

On *voir dire*, Bolton averred that, within "weeks" of 16 September 2011 and continuing up to the date of his arrest on 20 October 2011, he and defendant committed five or six additional break-ins in Orange County using the same "gold colored Honda Civic" belonging to defendant's mother. On each occasion Bolton would kick in the door to the residence and steal "[g]old jewelry or electronics" while defendant drove around in the Honda waiting for Bolton to call him on his cell phone. After picking Bolton up, defendant would take the items stolen by Bolton and sell them. Bolton testified that he had a standing arrangement with defendant wherein "I would physically break in the house, he would sell the jewelry."

Following his arrest on 20 October 2011, Bolton told police that he and defendant committed similar break-ins at 610 Creekstone, 333 Bayberry, 5623 Brisbane, and two residences on Black Tie Lane in Orange County. Bolton estimated that he and defendant went to Scavenger Antiques for defendant to sell stolen jewelry "[a]t least eight other times" besides 16 September 2011.

The court ruled Bolton's testimony about defendant's participation in similar acts during August through October 2011 was admissible under Rule 404(b) "as proof of motive, opportunity, intent, preparation, plan, knowledge, identity and absence of mistake with regard to the crimes charged in this case[.]" The court found "substantial evidence that the defendant committed the extrinsic acts." Moreover, in view of their similarity and temporal proximity to the charged crimes, the court ruled "that the probative value of such evidence of extrinsic acts is not substantially outweighed by the danger of unfair prejudice" under Rule 403.

## C. **Trial Testimony**

When the trial resumed, Bolton testified that he "recall[ed] three other occasions" when defendant participated

in break-ins with him.  Bolton described breaking into "[t]wo houses side by side" on Black Tie Lane:

> One house, I went in and got some assorted jewelry and an HP laptop.  I went right in the back door of the other house.  I got some more jewelry out of there and [defendant] picked me back up.  Gold colored Honda.  Went to Scavenger Antiques and sold that jewelry.

Bolton then recounted two additional incidents, the first of which involved a residence on "Brisbane" in Hillsborough, North Carolina:

> [Defendant] dropped me off.  Gold colored Honda.  [I] knocked on the door.  No one was there.  Kicked the side door in.  All I found was a laptop.  Took that.  Left. [Defendant] got rid of the laptop for me a couple days later.
>
> And then Bayberry, 333.  In the gold colored Honda.  [Defendant] and myself rode around. Found the house.  Knocked on the front door. No one answered it so I kicked it in.  I stole assorted jewelry and three MacBooks from the residence.

In each instance, defendant drove Bolton to the residence in the gold Honda, Bolton broke into and stole items from the residence, and Bolton communicated with defendant by cell phone to get defendant to pick him up.  Their purpose in committing the break-ins was "[t]o steal jewelry or electronics to sell."

In addition to 16 September 2011, Bolton recalled "[a]t

least three or four more times" when he "went to Scavenger Antiques with [defendant] to get rid of the jewelry." For each piece of jewelry that defendant sold, Bolton "would give him a third of all the cash that we got from it." Bolton also "would throw [defendant's] mom a little bit of money for letting me staying there."

### D. **Admissibility**

Under Rule 404(b):

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

N.C. Gen. Stat. § 8C-1, Rule 404(b). "Rule 404(b) states a clear general rule of inclusion of relevant evidence of other crimes, wrongs or acts *by a defendant*, subject to but one exception requiring its exclusion if its only probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged." *State v. Al-Bayyinah*, 356 N.C. 150, 154, 567 S.E.2d 120, 122 (2002) (quotation marks omitted). Rule 404(b) also requires a showing of both factual similarity and temporal proximity between the charged and uncharged acts. *Id.* at 154, 567 S.E.2d at 123. "We

review *de novo* the legal conclusion that the evidence is, or is not, within the coverage of Rule 404(b)." *State v. Beckelheimer*, 366 N.C. 127, 130, 726 S.E.2d 156, 159 (2012).

We begin with defendant's argument that the State failed to prove that he committed the other acts described by Bolton. "[E]vidence may be admitted under Rule 404(b) . . . if there is sufficient evidence to support a jury finding that the defendant committed the similar act; no preliminary finding by the trial court that the defendant actually committed such an act is required." *State v. Stager*, 329 N.C. 278, 303, 406 S.E.2d 876, 890 (1991) (adopting Fed. R. Evid. 404(b) standard in *Huddleston v. United States*, 485 U.S. 681, 687-88, 99 L. Ed. 2d 771, 781 (1988)). On *voir dire*, the trial court found "that the State has offered substantial evidence of the defendant's involvement as a perpetrator with co-defendant Bolton in multiple other breaking or entering residences, larceny therefrom, and sale of stolen goods of items stolen from those breaking or enterings that occurred during a time frame covering generally August, September, October, 2011." We agree. Although defendant insists that Bolton was not credible, the jury was entitled to credit his first-hand account of these incidents. *See State v.*

*Covington*, 315 N.C. 352, 360, 338 S.E.2d 310, 315 (1986). Accordingly, we find no merit to this claim.

We further agree with the trial court that evidence of defendant's participation in other break-ins with Bolton and his subsequent sale of the stolen jewelry at Scavenger Antiques was admissible under Rule 404(b) "as proof of motive, opportunity, intent, preparation, plan, knowledge, identity and absence of mistake with regard to the crimes charged in this case." *See State v. Martin*, 191 N.C. App. 462, 467, 665 S.E.2d 471, 474 (2008). As to the charges of breaking or entering and larceny, this evidence was probative of defendant's identity as Bolton's accomplice and his motive and intent in breaking into the residence. *Id.* For the charges of possession of stolen goods and obtaining property by false pretenses, the evidence was admissible to prove defendant's knowledge of the source of the stolen property as well as his "dishonest purpose" or felonious intent in possessing it. *See Tanner*, 364 N.C. at 232-33, 695 S.E.2d at 100. Moreover, the trial court properly found these other acts had such close similarity and temporal proximity to the 16 September 2011 incident to be admissible under Rule 404(b). *See State v. Owens*, 160 N.C. App. 494, 501, 586 S.E.2d 519, 524 (2003).

Finally, we find no abuse of discretion by the trial court in concluding that the probative value of this Rule 404(b) evidence "is not substantially outweighed by the danger of unfair prejudice or other consideration under Rule 403 of the Rules of Evidence." *See* N.C. Gen. Stat. § 8C-1, Rule 403 (2013); *State v. Handy*, 331 N.C. 515, 532, 419 S.E.2d 545, 554 (1992). The other acts described by Bolton were virtually identical to the charged offenses and occurred within a relatively brief span before and after 16 September 2011. *See Owens*, 160 N.C. App. at 501, 586 S.E.2d at 524. We note that the trial court also gave appropriate limiting instructions immediately before Bolton's testimony and in its final charge to the jury. *See Martin*, 191 N.C. App. at 469-70, 665 S.E.2d at 476.

## IV. <u>Conclusion</u>

The trial court committed no error in denying defendant's motion to dismiss and in admitting evidence of other acts by defendant pursuant to N.C. R. Evid. 403 and 404(b).

NO ERROR.

Judges STEPHENS and ERVIN concur.

Report per Rule 30(e).